It was clearly proven that the receipt was not given upon any adjustment of accounts between the executors and the legatee. No payment beyond a nominal one is expressed, and none is pretended to have been made at the time it was given. At the best, it was only an acknowledgment by a parol writing that the executor had not at that time anything *Page 140 
in his hands, as executor, belonging to Mrs. Thomas as legatee. The paper does not profess to be an admission that the executor had fully administered the estate of the testator, but only that he had accounted for all the moneys which had come to his hands as executor which belonged to her up to that date. The receipt, therefore, was no bar to the accounting sought.
It remains to consider the effect of the marriage settlement. That instrument contains a conveyance in form of all the real and personal estate of Mrs. Thomas to Mr. Ely, the executor, as her trustee. But the trust was a passive one. It was, to suffer and permit Mrs. Thomas "to occupy, possess and enjoy all and singular the said property," c. It clothed the trustee with a nominal legal title only; but, in the view of a court of equity, her interest as legatee in the estate of her deceased husband remained as it was before. The legal effect of the instrument as to the personal property was to prevent the marital rights of the husband she was about to marry from attaching; and that was, beyond doubt, the only operation it was intended to have. If it has a further effect to discharge the trustee or executor, it was aside from the design of the parties, and is the result of some technical principle operating to produce a result which was not contemplated. I think it has no such operation. The executor, as such, had a legal title to the estate of the deceased before the marriage articles were executed. He had no greater estate after they took effect. He held nothing as trustee under the marriage articles, until he had accounted with the legatee either by a voluntary arrangement, or by a decree of the surrogate or some court having jurisdiction. Until that event he held the assets as executor, and not as trustee under the settlement. It was important to the legatee to ascertain the extent of the property which she had in the estate of the testator, so that it might be known what was in the hands of the trustee under the ante-nuptial settlement. This could only be ascertained by a settlement or an accounting. Suppose, before any settlement or accounting, the respondent had been removed, and an executor de bonis *Page 141 non had been appointed according to the statute: could there be any doubt but that the new executor would have been entitled to the assets not paid out to creditors or legatees? I think not. There was not, therefore, such a merger of titles, when the respondent became trustee, as to enable him to say that he did not any longer hold the assets as executor, but had become the owner of them in his character as trustee for Mrs. Thomas.
It follows from what has been said that the respondent continued to hold the assets, or their produce, if he had converted them into money, in his character as executor of Sylvanus Thomas, and that the appellant, Mrs. Ely, as the equitable owner and party really entitled, had a demand against the personal estate of the deceased as legatee under his will. She was, therefore, entitled, according to the letter, as well as the spirit and intention of the statute, to an account of the administration. (2 R.S., p. 92, § 52.) It does not follow that if a sum should be found due her upon the taking of the account that the respondent would be ordered to pay it over to her. The nominal trust continues notwithstanding the late statutes concerning married women, and the decree ought probably to be that the executor should hold the amount remaining in his hands as trustee under the settlement. But the legatee may entitle herself to have it paid to her, notwithstanding her coverture, by procuring a certificate under the second section of the act of 1849. (Ch. 375.)
An executor may be compelled to render an account, though the party applying is not entitled to a decree for the payment of any amount. Indeed the surrogate may call for an account upon his own motion. (§ 52, supra.) The rendering an account to the surrogate, by an executor or administrator, and the settlement of such account including the decree to pay over, are not necessarily one proceeding. The former may be required where no settlement or decree for distribution can at the time be made. (Westervelt v. Gregg, 1 Barb. Ch. R., 469.) Hence an account has been ordered in the ecclesiastical courts at the instance of a residuary legatee who had given a release to the *Page 142 
executor, the court saying that it could not try the validity of the release, though it might be tested in the temporal courts; and that the account might be the means of discovering an unfair settlement. (Kenny v. Jackson, 1 Haggard, 105.) I do not doubt but that with us the surrogate would have power to determine a defence of that character which might be set up against the payment of a legacy, as the jurisdiction of that officer is different in some respects from that possessed by the spiritual courts in England; but in whatever tribunal the fairness of a receipt or release should be litigated, the state of the account would be a material circumstance bearing upon the question. The former surrogate of New York, Mr. Bradford, did not consider, in a case before him, that an assignment of his demand by the applicant for an account operated as a bar. (Bonfanti v.Deguene, 3 Bradf., 629.)
It is not intended in giving judgment in this case to pass upon the effect of the lapse of time upon the claim of Mrs. Ely, or upon the evidence tending to show that she had accepted the notes which had been taken by her executor for a portion of the assets, and had collected them by means of the agency of her father. The delay in calling upon the executor has been very great, and he will be entitled to a corresponding measure of indulgence in respect to the allowances to be made him on the settlement, and the presumptions to be indulged in. But we think it was erroneous to dismiss him altogether without his rendering any account.
The decree of the Supreme Court ought to be reversed, and the proceedings remitted to the surrogate through that court, to the end that he may proceed upon the citations obtained by the respondents.
SELDEN and SUTHERLAND, Js., expressed no opinion, all the other judges concurring,
Judgment reversed. *Page 143