MONTGOMERY COUNTY.—HON. Z. S. WESTBROOK,
SURROGATE.—July, 1887.

MATTER OF DUNKEL.

*In the matter of the estate of* JOHN DUNKEL, JR.,
*deceased.*

The authority possessed by a Surrogate's court, to apportion commissions
among co-executors, carries with it, incidentally, power to enforce pay-
ment of a sum awarded in such behalf, in like manner as any other
moneys decreed to be paid.

*It seems* that the responsibility of his position, alone, entitles one of two
or more co-executors to a share of the commissions, independently of
the services rendered by him in the administration of his decedent's
estate.

One of the two co-executors of decedent's will, who were also legatees
thereunder, having filed a petition praying for a judicial settlement of
the account of himself, and associate, and an apportionment of com-
missions, the latter set up and proved that petitioner and the other
beneficiaries had executed an instrument acknowledging the receipt of
their respective shares, and consenting to the entry without notice, of
an order discharging respondent from office as executor. The sum
due for commissions had also been agreed upon, and the entire
amount thereof retained by respondent, though the evidence showed
no intent, on the part of petitioner, to waive his right to a ratable
proportion.—

*Held,* that the instrument in question did not affect petitioner's claim to a
share of the commissions; that respondent could be compelled to
account for the amount thereof, withheld by him, with interest, as for
assets in his hands; and that the same should be apportioned be-
tween the executors according to the services rendered by them, re-
spectively.

CONTROVERSY as to apportionment of commissions,
on judicial settlement of executors' account.

GEORGE F. CRUMBY, *for petitioner.*

HIRAM L. HUSTON, *for respondent.*

THE SURROGATE.—This is a proceeding on the petition of Peter J. Dunkel, executor of the will of John Dunkel, Jr., late of the town of Minden, deceased, for a final settlement of the accounts of himself and of his co-executor Harvey Dunkel, and for an apportionment of commissions. All the legatees are made parties, the executors being also legatees and interested in the residue of the estate. The controversy has resulted in a contest between the executors as to their rights in and to their commissions, Harvey retaining and claiming the whole, and Peter J. claiming a share to be determined and awarded by the court.

Harvey alleges a private settlement and a written release from payment of any share of the commissions, signed by Peter J. and the other legatees. No settlement nor accounting has ever been had in this court; but it appears that, on June 11th, 1884, the executors and other legatees came together at the law office of Harvey in Canajoharie, and there had a private settlement between them, of the proceeds of the estate in the hands of the executors, the bulk of the estate being then in Harvey's hands, and the amount then held by the executors was distributed. Harvey has not since received any further assets, and he is not now chargeable with more. Peter J. has since found and recovered assets then unknown, amounting to $38, which are now in his hands.

The executors' commissions were agreed upon, at the time of the settlement referred to, at the sum of $354, which sum Harvey then had and has since

retained. Upon the distribution, the following receipt was prepared by Harvey, signed by Peter J. and the other legatees, and taken by Harvey, viz:

" In the matter of the estate ⎫
            of                        ⎬
John Dunkel, Jr., deceased ⎭

Received, June 11th, 1884, of Harvey Dunkel one of the executors of John Dunkel, Jr., late of the town of Minden, county of Montgomery, deceased, our and each of our respective shares, which we are and were entitled to, in the final distribution of the assets of said estate ; and we do severally consent that an order be entered by the Surrogate of said county discharging said Harvey Dunkel as such executor as aforesaid from his said office without any notice to us.

P. J. Dunkel
W. J. Dunkel
A. E. Beardsley."

It is well settled that executors are only entitled to claim or receive commissions by order of the court, upon a settlement of their accounts by the court (Redf. Surr. Prac., 708, 709, and authorities cited; Matter of Harris, 1 *N. Y. State Rep.*, 331; s. c., 4 *Dem.*, 463; Valentine v. Valentine, 2 *Barb.*, 430; Drake v. Price, 5 *N. Y.*, 430; Betts v. Betts, 4 *Abb. N. C.*, 317; Morgan v. Hannas, 13 *Abb. N. S.*, 361). The rule is different in cases of trustees, accounting annually to beneficiaries (Hancox v. Meeker, 94 *N. Y.*, 528; Matter of Mason, 98 *id.*, 527).

Of course, on a private settlement by parties, if commissions were agreed upon, and the amount retained by consent of the parties interested, without misrepresentation or imposition of any kind, the amount would be allowed to the executors by the court; not however as an absolute legal right, for exe-

cutors and persons interested in an estate should always have their settlements before, or sanctioned by the court, so that the determination would be judicial and final.   The receipt in question does not estop or prevent the executor Peter J., nor any of the other legatees, from calling Harvey to an accounting before the Surrogate's court.   That right always exists unless and until a final judicial settlement has been had. Of course, if a private accounting and settlement has been had, honestly and fairly, it would be ratified and confirmed in the decree of the court.   But the doors of the court cannot be shut against a judicial settlement, and a thorough investigation of the rights of parties, by receipts and private stipulations (Harris v. Ely, 25 *N. Y.*, 138 ; Reilley v. Duffy, 4 *Dem.*, 366 ; Matter of Read, 41 *Hun*, 95).

I think that the receipt given does not deprive the executor, Peter J., of his fair share of the commissions.   Harvey may have so intended, but Peter J. did not so intend.   He could not be deprived of his share without his consent.   I am satisfied from the evidence given that Peter J. did not suppose or consent that Harvey should retain all the commissions, nor intend that the receipt released his share to Harvey.   The receipt does not, upon its face, release the commissions.   It is only a receipt for the distributive share of each, and a consent that Harvey be discharged by the Surrogate.   It nowhere refers to the question of commissions, nor stipulates that Harvey shall have them all.   Whatever effect might have been given to Harvey's discharge, had it been granted by the court, it is enough to say that the receipt was

never filed, nor the discharge obtained; and now when all the parties are before the court in the appropriate proceeding, with all the facts, the court has full power, and it is its duty to adjust and enforce all the rights of the parties as between each other.

The power of the court, under the provisions of the Code of Civil Procedure, to adjust and enforce the rights of these executors between each other I consider ample and complete. The moneys in Harvey's hands ($354) retained as commissions, not having been allowed nor apportioned by the court, are the same as so much assets in his hands undisposed of, and he can now be compelled to account for the same. That sum is now properly applicable to satisfy the claim of each executor for commissions. Presumptively, each executor is entitled to an equal share (White v. Bullock, 4 *Abb. Ct. App. Dec.*, 578). Commissions are intended to compensate executors or administrators for their services, care, and responsibility in the administration, and they should be apportioned upon the aggregate of the assets received and paid out, according to the services and care given, and the responsibility assumed by each in the entire administration of the estate (3 R. S. Banks, 7th ed., 2303; Code Civ. Pro., § 2736; Matter of Harris, 4 *Dem.*, 463; Hill v. Nelson, 1 *id.*, 357).

It ought not to be held that, because one executor voluntarily, and perhaps by design, takes possession of all the assets, and transacts substantially all the business of the estate, he should receive all and his co-executor none of the commissions. The responsibility of the position alone should entitle an executor

to compensation. But the commissions should, as the statute prescribes, be apportioned by the court, according to the amount of service rendered by each executor. Both executors in this case rendered valuable services to the estate. Harvey is a lawyer, and performed the greater part of the work and is entitled to the larger share. From the evidence produced, I think that Harvey should have two thirds, or $236, and Peter J. one third, or $118, and I so apportion them between them accordingly.

The authority given to the court, to apportion commissions, carries with it incidentally and necessarily the power to enforce payment thereof, the same as any other sum authorized and directed to be paid by decree or order of the court. The amount of the commissions, until allowed and apportioned by the court, as before stated, remains in the hands of the executors as assets, for which the court, with the parties before it, has ample power to compel an accounting, and to direct and enforce payment of the same to such parties and in such shares as the court may determine and decree. The balance of $30 in the hands of Peter J. Dunkel, as shown by his account, may be retained by him, and applied towards his costs of this proceeding, and the same are allowed him for that purpose.

A decree should be entered, finally and judicially settling the account of the executors and each of them, and discharging each from any further liability on account of any and all assets received. To the sum of $118, allowed to Peter J. for his portion of the commissions, must be added interest from June

11th, 1884, amounting, at this date, to $22, making a total of $140.00, which sum shall be paid to Peter J. by his co-executor Harvey Dunkel. The proper decree will be prepared and entered accordingly.