IN THE MATTER OF THE JUDICIAL SETTLEMENT OF THE ACCOUNTS OF JAMES D. TAYLOR, AS SOLE SURVIVING, EXECUTOR OF THE LAST WILL AND TESTAMENT OF WEBSTER WAGNER, DECEASED.

IN THE MATTER OF THE ESTATE OF WEBSTER WAGNER, DECEASED.

*Settlement of an estate, by the parties in interest, by their execution of a written sealed release — an administrator of a deceased legatee cannot compel the executors to file an inventory and account — a surrogate cannot pass upon the validity of the release — section 2715 of the Code of Civil Procedure construed.*

Webster Wagner died in January, 1882, leaving him surviving his widow Susan Wagner and five children. By his will, after giving his family residence, with the personal property therein, to his widow for life, with the remainder to Norman L. Wagner, one of his sons, and to each of his children certain specific real estate, with the condition in each instance that if a devisee should die, without lawful issue surviving, the property should go to the other children, he gave the residue of his real and personal estate equally to his widow and five children. In January, 1882, letters testamentary werre issued to his widow and to Norman L., his son, and his son-in-law James D. Taylor.

On March 7, 1885, the widow and all of the five children executed, under their hands and seals, an instrument of that date setting forth the fact of the execu tion of the will and the residuary clause in full and the probate, by which each acknowledged the receipt from the said executrix and executors of "the sum or legacy of seventy-five thousand dollars, to each of us in hand paid, being the one-sixth part of all real estate, all notes, bonds and mortgages, * * * and all other personal effects not otherwise specifically devised under said last will and testament · aforesaid, so given and bequeathed to us as aforesaid, and do acquit, release and discharge the said Susan Wagner, Norman L. Wagner and James D. Taylor of and from all legacies, dues and demands whatsoever under or by virtue of the said last will and testament, or against or out of the estate of the said Webster Wagner."

Norman L. Wagner having died, November 4, 1886, intestate, leaving children surviving him, letters of administration on his estate were issued on November 29, 1886, to Josephine L. Wagner, who, on October 26, 1887, upon a petition setting forth part of the will of Webster Wagner, the appointment of the executrix and executors, and that James D. Taylor was his sole surviving executor, that no inventory had been filed, and also her own appointment, applied to the surrogate to compel said surviving executor to file it. The executor answered setting up that the personal property had been fully accounted for and, also, the agreement above set forth.

Upon an appeal from an order of the surrogate directing an inventory to be filed, and from an order made by him on a similar application ordering the executor to account:

*Held,* that, as to the personal property specifically bequeathed to the widow, Susan Wagner, with remainder to Norman L., the executrix and executors had nothing to do but to deliver it to the life tenant, and that the paper, signed by the widow and Norman L., proved, until contradicted, that that specific legacy was properly delivered.

That when the executors of a will had fully accounted and settled with all the legatees, and have paid their respective shares and had been discharged by such legatees out of court, the administratrix of one of those legatees could not, without proof of fraud, compel the filing of an inventory.

That the provisions for filing an inventory and for having accountings were for the benefit of the persons interested, and that if such persons preferred to settle their affairs privately, such settlement should have the same conclusive effect as a similar settlement in any other matter.

*Thomson* v. *Thomson* (1 Bradf., 24); *Burwell* v. *Shaw* (2 id., 322); *Creamer* v. *Waller* (2 Dem., 351); *Bonfanti* v. *Deguerre* (3 Bradf., 429); *Matter of Dunkel* (10 N. Y. St. Rep., 213) distinguished.

That the surrogate could not pass upon the validity of the release; that a court of equity must decide that question.

*Bevan* v. *Cooper* (72 N. Y., 317); *Stilwell* v. *Carpenter* (59 id., 414); *Tucker* v. *Tucker* (4 Keyes, 136); *Pettigrew* v. *Foshay* (12 Hun, 486) followed; *Matter of Read* (41 id., 95); *Harris* v. *Ely* (25 N. Y., 138) not followed; *Kenny* v. *Jackson* 1 Hagg. Ecc., 105) distinguished.

It was urged by the respondent that the filing of the inventory and the accounting should be directed in order to funish facilities for the plaintiff to prove that the settlement of March, 1885, was fraudulent.

*Held,* that this claim could not be sustained, as the plaintiff could, in an action to set aside the settlement, examine the defendant and compel the exhibition of the inventory and all accounts which might be needed, and in such action the whole matter could be investigated and satisfactorily disposed of.

It was further claimed by the respondent that by reason of the provisions contained in section 2715 of the Code of Civil Procedure when an application is made by a creditor or a person interested in the estate, and the petitioner alleges an interest and the petition is duly verified, the surrogate *must,* if satisfied that the executor or administrator is in default, make an order requiring the delinquent to return an inventory.

*Held,* that this construction should not be given to such section, as if it were, any person who verified a petition, alleging that he was interested in the estate, however false the allegation might be, could compel an inventory to be filed and an accounting to be made in reference to an esteste, in which he had no shadow of interest.

APPEAL by James D. Taylor, as sole surviving executor of the last will and testament of Webster Wagner, deceased, from a decree

entered by direction of the surrogate of Montgomery county on March 5, 1888, directing him to file an inventory, and from a decree of like date requiring him to file an account.

The deceased died in January, 1882, leaving him surviving his widow, Susan Wagner, and his five children, Norman L. Wagner, Emma C. Taylor, Anna P. Van Vlack, Clara E. Stetson and Annetta Q. Wagner. By his will he gave his family residence, with the personal property attached thereto, to his widow for life, with remainder to Norman L. Wagner. He gave to each of his children certain specific real estate, with the condition in each instance that if the devisee should die without lawful issue surviving, the property should go to the other children. He then gave the residue of his real and personal estate equally to his widow and his five children, and made his widow, his son, Norman L., and his son-in-law, James D. Taylor, executrix and executors. Letters testamentary were duly issued to them in January, 1882.

On the 7th day of March, 1885, the widow and all the five children executed, under hand and seal, an instrument of that date, setting forth the fact of the execution of the will, and setting forth fully the aforesaid residuary clause and the probate, and then proceeded as follows:

"Now, therefore, we, the said Susan Wagner, Norman L. Wagner, Emma C. Taylor, Anna F. Van Vlack, Clara E. Stetson and Annetta C. Wagner, severally, hereby acknowledge the receipt from the said Susan Wagner, executrix, and Norman L. Wagner and James D. Taylor, executors, as aforesaid, the sum or legacy of seventy-five thousand dollars to each of us in hand paid, being the one-sixth ($\frac{1}{6}$) part of all real estate, all notes, bonds and mortgages, railroad stocks, sleeping car and drawing-room car stocks, and all other personal effects, not otherwise specifically devised under said last will and testament aforesaid, so given and bequeathed to us as aforesaid, and do acquit, release and discharge the said Susan Wagner, Norman L. Wagner and James D. Taylor of and from all legacies, dues and demands whatsoever, under or by virtue of the said last will and testament or against or out of the estate of the said Webster Wagner."

The instrument closed with a release and discharge of the execu-

trix and executors of and from all legacies, dues and demand whatsoever under or by virtue of said will.

On the 4th of November, 1886, Norman L. Wagner died intestate, leaving children surviving. Letters of administration on his estate were issued November 29, 1886, to Josephine L. Wagner. Josephine L. Wagner, administratrix, on the 26th day of October, 1887, upon a petition setting forth part of the will of Webster Wagner, the appointment of executrix and executors, and the fact that James D. Taylor was sole surviving executor; her own appointment, and also the fact that no inventory had been filed, applied to compel said surviving executor to file such inventory. The surviving executor answered, setting up that the personal estate had been fully accounted for; that the petitioner had no interest therein; that a full statement of all matters and things pertaining to the personal estate of said decedent was made February 27, 1885, by the executrix and executors to the widow and children, and a paper given thereupon by the widow and children, under hand and seal; being that above stated.

On the hearing before the surrogate the petitioner proved the will and probate, also the will of Susan Wagner and probate, and the petitioner's appointment as administratrix of Norman L., and as guardian of his children, and rested. The executor proved the instrument above described. There was no other evidence. The surrogate ordered an inventory to be filed. A similar application was made by the same petitioner to compel the said surviving executor to make an accounting. The same evidence was given and the surrogate ordered an accounting. The surviving executor appeals from both orders.

*Esek Cowen,* for the executor, appellant.

*Hiram L. Huston,* for Josephine L. Wagner, administratrix, petitioner, respondent.

LEARNED, P. J. :

As to the personal property specifically bequeathed to the widow, Susan Wagner, with remainder to Norman L., it is plain that the executrix and executors had nothing to do but to deliver it to the life tenant. The remainderman, Norman L., was entitled to have from her an inventory. Perhaps, in a proper case, he might have

security from her. But the duty of the executrix and executors of William Wagner was performed when they delivered the property to the widow. The paper signed by the widow and Norman L., is proof until contradicted, that that specific legacy was properly delivered. If Norman L. or his widow, the petitioner, seeks to obtain that property, they must proceed against the executors of Susan Wagner's will.

As to the rest of the property, the question, briefly stated, is this: When the executors of a will have fully accounted and settled with all the legatees, and have paid them their respective shares and have been discharged by such legatees out of court, can the administratrix of one of those legatees, without proof of any fraud, compel the filing of an inventory? There certainly seems to be no reason, upon principle, why the parties in interest should not, without any proceeding in court, examine an executor's inventory and account and settle the same and give him a full discharge. The provisions for filing an inventory and for having accounts are for the benefit of the persons interested, not for the satisfaction of the public or of the assessors; and if such persons prefer to settle their affairs privately, such settlement should have the same conclusive effect as a similar settlement in any other matter. That view is especially strong in the present case, because the petitioner is the representative of one of the executors, who (it is to be presumed) had, and knew of, the inventory of property and the accounts of the executors, and who distributed to himself and the other legatees his and their respective shares, according to the instrument of March 7, 1885. There is no doubt that, in some court, relief can be had by the petitioner against that instrument, if it was obtained by fraud. But the question here is, whether, notwithstanding the settlement of which, at present, that instrument is evidence, she has a right to compel the filing of an inventory.

The petitioner cites several cases which we must examine. (*Thomson* v. *Thomson* 1 Bradf., 24). In this case it turned out on examination that the inventory had been filed. Therefore, there could be no decision as to the right to compel its filing. *Burwell* v. *Shaw* (2 Bradf., 322), was not a case in regard to an inventory, but in regard to granting letters. *Creamer* v. *Waller* (2 Dem. 351), was the case of a creditor whose debt was disputed,

but who showed facts in support thereof. In *Bonfanti* v. *Deguerre* (3 Bradf., 429), the executor, in reply to the petitioner, alleged an assignment of the petitioner's claim. It was held that this was not a sufficient answer. *Matter of Dunkel* (10 N. Y. St. Rep., 213), held only that an executor could have his commission from a co-executor, notwithstanding his having signed a receipt for his distributive share. *In re Brown* (3 Civil Pro. R., 39), has nothing to do with the filing of an inventory. (*In the Matter of Read*, 41 Hun, 95.) This was an application by a distributee to compel an accounting It was opposed by the administrator on the ground of a general release of all claims and demands and of all liability as administrator. The court held that the surrogate could determine the validity of the release, and that an accounting should be ordered. The decision that the surrogate could try the validity of the release is there stated to rest on *Harris* v. *Ely* (25 N. Y., 138). In *Bevan* v. *Cooper* (72 N. Y., 317), the court say that the remark in *Harris* v. *Ely* was *obiter*, and it is disapproved. Indeed, it may be considered as decided by that case, and by *Stilwell* v. *Carpenter* (59 N. Y., 414) and *Tucker* v. *Tucker* (4 Keyes, 136), that the surrogate could not pass upon the validity of the release. The case of *Van Sinderen* v. *Lawrence* (20 N. Y. St. Rep., 72), was one in regard to a testamentary trustee, and is said, in the opinion, to be analogous to a similar case in regard to an executor. The plaintiff, a testamentary trustee, applied to the surrogate for an accounting. The defendant claimed to be made a party, and was so made. The plaintiff objected to defendant's being heard, on the grounds of a release. The surrogate refused to pass on the validity of the release. This action was commenced to restrain the proceedings before the surrogate until decision by the Supreme Court on the validity of the release. The action was sustained. Similar to this is *Pettigrew* v. *Foshay* (12 Hun, 486). These cases imply that the proceedings before the surrogate should not go forward until a court of equity had decided that the release is invalid.

The case of *Kenny* v. *Jackson* (1 Hagg. Ecc., 105) is repeatedly cited. That was a case in the Prerogative Court of Canterbury. In the opinion it is remarked that it was claimed that Kenny, the petitioner, was a minor when he released, and that he certainly was a very young man. The court further say that they cannot notice such an

instrument, but that if the executor is vexatiously cited he may have relief in another court. It would seem, then, that in that case the youth of the petitioner was considered, and, also, that it was thought that some other court could relieve the executor if the proceedings were vexatious. We suppose that if this executor has been cited vexatiously the surrogate should have relieved him, and certainly no question exists in this case as to the legatees being of full and ripe age.

It is worth noting here that the surrogate in his opinion says, that, after an accounting shall have been had, should the petitioner proceed to ask a decree against the executor in respect to any portion of the funds of the estate, it may then be necessary to determine the validity of the release and its effect. Now, as the filing of an inventory and the having an accounting are of no use unless the petitioner can have a decree for some funds, and as the surrogate cannot try the validity of the release, it would seem that this proceeding must be of no avail. That is, suppose an inventory be filed and an accounting had, and thereupon it should appear that the value of the estate on the 7th of March, 1885, was more than six times the amount received by Norman L. Wagner, what then is to be done? An action must be brought to set aside the release on the ground of fraud. If that action should be unsuccessful, then the filing of an inventory and the accounting would have been useless.

But it is strongly urged that the inventory and the accounting should be had in order to furnish facilities for the plaintiff to prove that the settlement of March, 1885, was fraudulent. But all this can substantially be obtained in an action to set aside the settlement. The plaintiff can, in such an action, examine the defendant and compel the exhibition of all the inventory and accounts which may be needed. In such an action the whole matter can be investigated and satisfactorily disposed of.

The petitioner further relies on section 2715 of the Code of Civil Procedure, subdivision 2. The note informs us that this is intended to settle a question. It is quite as likely to unsettle it. If it means that any person who will verify a petition, that he is interested, however false the allegation may be, can compel inventories and accountings in an estate in which he has no shadow of interest, it has introduced a most dangerous principle. Such should not be its

construction.    No person should, without .reasonable evidence of interest, interfere in the settlement of an estate; and where there has been a voluntary settlement and release by all the parties interested, the representative of one of those parties should have such settlement and release set aside in a legal manner before the matter should be reopened.    The court should not discourage parties from voluntarily making a full settlement in the case of estates of deceased persons any more than in any other matters of trust.

The order of the surrogate should be reversed, with costs.    The same, also, as to the order of accounting.

.INGALLS, J., concurred; LANDON, J., dissented.

Orders of surrogate reversed, with costs on each appeal.