In re UNITED STATES TRUST CO. OF NEW YORK.

(Supreme Court, Appellate Division, First Department.  February 13, 1903.)

1. TRUSTS—CONVEYANCE OF INTEREST—EFFECT—SURROGATE—JURISDICTION.

Where a testator left property to a trustee to pay a portion of the income to her son for life, and on his death to convey in equal shares to his three children, or to such of them as should then be alive, etc., and one of such children conveyed all his interest in such estate to his father, who then released to himself his interest in the income of the share of the estate so conveyed to him, and then conveyed back to such child one-third of the estate, the surrogate, on an accounting by the trustee, did not have power, under Code Civ. Proc. § 2743, providing that, when the validity of a distributive share has been established on an accounting or other proceeding, the decree must determine to whom payable, the sum to be paid thereon, and all other questions concerning the same, to determine the validity and effect of such conveyances and release, and direct the trustee to convey one-third of the trust estate to such child, though all the beneficiaries of the trust consented thereto.

2. SAME.

Code Civ. Proc. §§ 2812, 2813, providing that on the judicial settlement of the accounts of a testamentary trustee the issues thereupon must be determined in the same manner as other issues are determined, are not a grant of power to the surrogate to try those issues, which can only be tried by the exercise of general equitable powers.

3. SAME—MERGER—TERMINATION OF TRUST.

Under Laws 1896, c. 547, § 83, and Laws 1897, c. 417, § 3, providing that, when a beneficiary in a trust for the receipt of the income of the trust estate is entitled to a remainder in the whole or a part of the property, subject to his beneficial interest, he may release his interest in such income, and thereupon the estate of the trustee shall cease, such right to release and thereby terminate the trust is given only to such beneficiaries as are entitled to the whole income of the trust estate, or a definite part thereof, and not to a beneficiary who was to receive a liberal support out of the income, the remainder of income to be applied to the support and education of others, and, if there was a surplus, to be allowed to accumulate.

Appeal from surrogate's court, New York county.

Accounting of the United States Trust Company of New York, as trustee under the will of Helena Rogers, deceased. From so

much of the decree settling the account as directs the payment of one-third of the trust estate to John Ferndon Rogers, one of the beneficiaries of the trust, the trustee appeals. Reversed.

Helena Rogers died on the 13th day of May, 1896, leaving a will, which was duly admitted to probate in the surrogate's court of New York county as a will of real and personal property. She left as her descendants her only child, Hoffman Rogers, and his three children, John Ferndon Rogers, the respondent herein, of full age, Helena Hoffman Rogers, and Benjamin Woolsey Rogers, both minors, but now of full age. The United States Trust Company of New York duly qualified as executor and trustee under her said will, and has ever since remained in possession of the trust estate. That portion of her will which is brought into consideration by this appeal, after giving her residuary estate, which consists of both realty and personalty, to the said trust company in trust, directs it to be held as follows: "To apply a sum annually in equal quarter-yearly payments, sufficient, in the judgment or discretion of my executor and trustee, or his successor, for the liberal support, care, and maintenance of my son, Hoffman Rogers, during the term of his natural life. And to pay over to the guardian of the estates of the children of my said son, Hoffman Rogers, in equal quarter-yearly payments, such sums as, in the judgment or discretion of my executor and trustee, or his successor, shall be proper for their support, education, and maintenance during their respective minorities. And in case there should be a surplus of said net rents, issues, interest, income, and profits after applying and making such payments as aforesaid, I direct such surplus to be accumulated during the respective minorities of my grandchildren, and paid over to them in equal shares or portions, as they severally attain the age of 21 years. And in case of the death of any one of my grandchildren before attaining the age of twenty-one years, leaving lawful issue, I give, devise, and bequeath the share of said accumulated income of the one so dying to his or her issue in equal portions. And in case of the death of any of my grandchildren before attaining the age of twenty-one years, without leaving lawful issue, I give the share of said accumulated income of the one so dying to the survivors or survivor of my grandchildren in equal shares. Eighth. Upon the death of my said son, Hoffman Rogers, I direct the income hereinbefore set apart for his benefit to be held and disposed of in all respects as I have hereinbefore provided for the holding and disposing of the rest, residue, and remainder of the income set apart for the benefit of my grandchildren. Ninth. After the death of my said son, Hoffman Rogers, and as my grandchildren severally attain the age of twenty-one years, I hereby give, devise, and bequeath to each of them the equal part or share of all the rest, residue, and remainder of my said estate, with the accumulation of interest thereon, if any, to them, share and share alike, their heirs and assigns, forever; or upon the death of my said son, in case any one of my said grandchildren shall have died before attaining the age of twenty-one years, leaving lawful issue, I give, devise, and bequeath the part or share of the one so dying of all the said rest, residue, and remainder of my said estate, with the accumulations of interest thereon, if any, to his or her issue in equal portions; or upon the death of my said son, and in case of the death of any one of my grandchildren before attaining the age of twenty-one years, without leaving lawful issue, I give, devise, and bequeath the part or share of the one so dying of all the rest, residue, and remainder of my said estate, with the accumulations of interest thereon, if any, to the survivors or survivor of my grandchildren, in equal shares. And I hereby expressly authorize and empower my said trustee or his successor for such purpose to make division and partition of my said estate hereinbefore provided for in such form or manner as to my said trustee or his successor shall seem equitable, just, and proper, into so many parts or shares as my son shall leave children, or the representatives of such children, him surviving, per stirpes, and not per capita." On March 27, 1902, John Ferndon Rogers duly conveyed to his father, Hoffman Rogers, all his right, title, and interest of, in, and to the estate of Helena Rogers, deceased. Hoffman Rogers thereupon released to himself his interest in the income of the share of the estate so conveyed to him, and then conveyed back to the said John Ferndon Rogers

one-third of the said estate.  John Ferndon Rogers thereupon commenced proceedings in the surrogate's court to compel the judicial settlement of the trustee's accounts, and the payment to him of the said one-third part of said estate.  The trustee subsequently filed a voluntary account, and the two proceedings were consolidated.  All persons interested in the estate were duly cited, and all consented in writing that a decree be entered directing the payment of the said one-third to John Ferndon Rogers.  The surrogate referred the matter to Mr. Edward B. Whitney to take and state the account.  For the purpose of meeting a question raised by the counsel for the trustee, an assignment was procured from Helena Hoffman Rogers and Benjamin W. Rogers, to Hoffman Rogers of all their right, title, and interest of, in, and to any future income from the said estate, which assignments were received in evidence.  The referee reported as a conclusion of law that the trust under the will was not terminated.  Exceptions to the referee's report were duly filed by the contestant, which duly came on to be heard before the surrogate; which exceptions were sustained by him, and a decree was thereupon entered settling the account and directing the payment of one-third of the principal fund to John Ferndon Rogers.  From so much of the decree so entered as directs the payment of one-third of said estate to said John Ferndon Rogers, this appeal is taken.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

Edward W. Sheldon, for appellant.
Charles L. Pashley, for respondent.

HATCH, J.  It is well settled law that a surrogate's court is a court of limited jurisdiction, and in respect to accountings by testamentary trustees and guardians such court takes no incidental powers, but only such as are expressly given by the statute, and has no authority to exercise general equitable powers in the disposition of controversies arising therein.  Matter of Hawley, 104 N. Y. 250, 10 N. E. 352.  The provisions of the Code of Civil Procedure have not changed the rule bearing upon such subject.  Its jurisdiction over the accounts of testamentary trustees is coextensive with its jurisdiction over accountings by executors and administrators.  In Van Sinderen v. Lawrence, 50 Hun, 272, 3 N. Y. Supp. 25, the Code provisions as they existed at the time when that decision was rendered were examined, and the conclusion was reached as above announced. Therein it was held that a surrogate's court had no power to determine collateral or incidental disputes involving the rights or titles of claimants to an interest in the estate, and that it had no power to determine the effect of a general release executed by a party interested in the estate to the trustee, whereby the right and title of such party to share therein was remitted.  A similar doctrine was announced in Matter of Wagner, 52 Hun, 23, 4 N. Y. Supp. 761, affirmed on appeal 119 N. Y. 23, 23 N. E. 200, wherein it was said, in speaking of the powers of the surrogate:

"His powers and duties are prescribed by the Code provisions, and his jurisdiction is special, and limited to the subjects prescribed by the statute. That general jurisdiction, which comprehends such a power as to nullify and set aside the deeds of parties for fraud, is not comprehended in the express grant of powers, nor is it incidental to the particular authority conferred. The procedure in surrogates' courts formerly followed the courts of common law, and now is governed by the system created by the provisions of the Code

of Civil Procedure. Neither before did they possess, nor now do they possess, the general powers of a court of equity."

The same doctrine was announced in Matter of Hodgman, 11 App. Div. 344, 42 N. Y. Supp. 1004, affirmed on appeal 161 N. Y. 627, 55 N. E. 1096. In Matter of Randall, 152 N. Y. 508, 46 N. E. 945, the doctrine was again reiterated. Therein it was held that upon an accounting by an administrator in a surrogate's court, where a distributive share was claimed by two persons, one by original title and the other by an assignment valid upon its face, the surrogate had no power to try such question, but resort must be had to a court of equity for such purpose. The learned referee, in commenting upon this case, drew a distinction between an accounting by a trustee and an accounting by an administrator, and apparently held that, while the surrogate had no power to try the question in an accounting by an administrator, yet he had such power in an accounting by a testamentary trustee. Such distinction is not sound. The power of the surrogate in each case is the same, as is distinctly held in the authorities to which we have called attention. The Randall Case, supra, was decided prior to the amendment of the provisions of the Code in 1895 and 1898. Section 2743 of the Code of Civil Procedure, as it stood when the decision in the Randall Case was announced, read:

"Where the validity of a debt, claim or distributive share, is in dispute, or has been established, the decree must determine to whom it is payable, the sum to be paid by reason thereof and all other questions concerning the same."

By the amendment the words "in dispute" were dropped, and additions made thereto, making the section read:

"Where the validity of a debt, claim or distributive share is admitted, or has been established upon an accounting or other proceeding in the surrogate's court, or other court of competent jurisdiction, the decree must determine," etc.

It is evident that no greater power was conferred upon the surrogate by this amendment than before existed. Indeed, in one respect it is weaker, as the words relating to the account "in dispute" are omitted, while the words that are added simply contemplate an establishment of the claim, either by the accounting or other proceeding in the surrogate's court. Provision is not made for any additional proceeding, or the exercise of any different power, than had formerly existed. The words "upon an accounting" did not extend the power of the surrogate, and the language "other proceeding" evidently contemplated such proceedings for the establishment of debts or claims as had before existed, while the further language, "or other court of competent jurisdiction," contemplates that questions might arise, as before, upon such accounting, of which the surrogate's court had no jurisdiction, and when resort would be necessary to a court authorized to exercise general equitable powers. This amendment, therefore, has not added any greater equitable jurisdiction than was formerly possessed by the surrogate. The power to determine and pass upon the validity and effect of a release and an original claim to a distributive share is not other than nor different from the power which is exercised in the determination of the validity of a release,

the purpose and effect of which is to destroy a trust created by the will, and involves the power to determine title to real and personal property passing by the instrument. As the power cannot be upheld in the former, so likewise it may not be in the latter. The question which the cestui que trust and the remainderman presents for determination is the validity of the releases, which in terms pass titles to the trust estate. This is not a question arising upon the interpretation of the will, nor is it embraced within any of its terms, nor is it in any wise presented in the construction of that instrument. It is quite different from and independent of any question arising upon the terms of the will. The forum in which such question can be determined must, of necessity, be possessed of general equitable power. The validity of the releases involves a construction of the act under which they are claimed to be authorized, and the property is transferred by virtue of a decree giving force and effect to these instruments. The power which settles and determines these questions, therefore, is essentially equitable. It arises entirely outside of the will, and is not necessarily involved in the accounting of the testamentary trustee under the will. The surrogate has no power to determine such question, as it is not given to him, either by terms or implication in the Code provisions, and inherently it necessarily involves the application of equitable principles and powers in determination of the respective rights of the parties. Upon principle, and under the authorities which we have cited, it seems to be clear that the determination of the validity of these releases is quite outside of any jurisdiction possessed by the surrogate. The learned referee, however, concluded that by virtue of the provisions of sections 2812 and 2813 of the Code of Civil Procedure, the surrogate was invested with such power. An examination of these actions shows that the grant of power therein contained is the same as is given in the cases of executors and administrators. These provisions are that upon the judicial settlement of the account of a testamentary trustee the issues thereupon "must be determined in the same manner as other issues are determined." This is not a grant of power to the surrogate to try all issues, or those issues which can only be tried by the exercise of general equitable powers. On the contrary, so far as the grant of power is concerned, they are words of limitation, as the questions are to be determined in manner the same as such issues are usually determined. Thus this language, when construed with the grant of power given to the surrogate, limits his authority to the determination of those questions of which he has jurisdiction, and does not confer power to try and determine every question which may be proposed upon such accounting. In principle this question was determined adversely to such contention in Matter of Horn, 7 App. Div. 89, 39 N. Y. Supp. 954. We conclude, therefore, that the surrogate possessed no jurisdiction to pass upon and determine the effect of these releases.

We are also of opinion that the proper construction of this will does not bring the case within the provision of the Acts of 1896 and 1897. The learned referee has clearly and succinctly stated the rea-

sons for such conclusion, and we adopt the same as expressive of our views, as follows:

"The wording of the act of 1893 had been so awkward and obscure as to provoke much criticism. That of the present laws was evidently framed with considerable care, in the effort to preserve as much of the superseded act as should be valuable, and at the same time make it distinct and unambiguous. We may therefore presume that the intent of the legislatures of 1896 and 1897 is to be found well expressed in the language which they used, and in especial we may presume also that whatever provisions of the act of 1893 were dropped in the revision were dropped deliberately. The privileges of the act of 1893 were afforded to any 'person beneficially interested in the whole or any part of the income of any trust heretofore or hereafter created for the receipt of the rents and profits of lands,' etc. The privileges of the present laws are afforded to 'a beneficiary in a trust for the receipt of the rents and profits of real property,' etc., 'who is entitled to a remainder in the whole or a part of the principal fund so held in trust, subject to his beneficial estate for a life or lives or a shorter term.' The expression 'provision as to a beneficiary of a part only of the income of a given fund' is thus stricken out, and the fund is referred to as subject to the 'beneficial estate for a life,' etc., of the person releasing. When language like the present is substituted for provisions like those of the act of 1893, the more proper construction would seem to limit its operation to those comparatively simple trusts where the cestui que trust has for the time being a complete equitable estate in the trust fund."

It follows from these views that the decree of the surrogate should be reversed, and the report of the referee should be affirmed, with costs to all parties payable out of the estate. All concur, except LAUGHLIN, J., who dissents.