This necessarily brings us to a brief consideration of the question as to whether applications of this description come within the purview of the act cited. It may be that they do not come strictly within the letter of the act, but they certainly are embraced within its spirit. The statute provides that the report of the referee in a proceeding of this character shall be filed in the office where the order for his appointment is entered, and shall be conclusive as to the rights of the parties, unless set aside by the court. This proceeding, resulting in a conclusive judgment as between the parties, would make it an idle ceremony to require notice to be given to the Attorney General when application was made for the distribution of the assets of the corporation towards the payment of these claims only after they had been conclusively established. He would then be tied hand and foot by the judgment, and no method whatever is suggested by which he might be able to sift the merits of the claim, as he could have done if he had had notice and could have appeared before the referee. It seems to us that the establishment of claims against the estate is a very important step in a proceeding for the distribution of the assets amongst the persons entitled thereto. We think, under these circumstances, that the Attorney General should have had notice of this application, and that the motion to set aside the order of reference should have been granted.

The order should be reversed, with $10 costs and disbursements, and the motion to set aside the order of reference granted, without costs.

---

(98 App. Div. 122)

### In re BUNTING'S ESTATE.

(Supreme Court, Appellate Division, First Department. November 25, 1904.)

1. ESTATES OF DECEDENTS—FRAUDULENT TRANSFER BY DECEDENT—RIGHTS OF CREDITOR—ATTACK ON TRANSFER—JURISDICTION OF SURROGATE.

Laws 1897, p. 509, c. 417, § 7, providing that a creditor of a deceased insolvent debtor may maintain an action to set aside a fraudulent conveyance by deceased, does not confer on the Surrogate's Court authority to determine whether a transfer by a testator was void as fraudulent, since such a transfer may only be attacked in a court of equity.

2. SAME—JURISDICTION OF SURROGATES—CONSTITUTION.

Conceding that Laws 1897, p. 509, c. 417, § 7, was intended to confer on the Surrogate's Court jurisdiction to determine whether a transfer made by a testator was fraudulent as against his creditors, the statute is violative of Const. art. 6, § 15, providing that the surrogates and Surrogates' Courts shall have jurisdiction and powers which the surrogates and existing Surrogates' Courts "now possess, until otherwise provided by the Legislature," since the constitutional provision gives no authority to add to the jurisdiction of Surrogates' Courts, and at the adoption of the Constitution they had no equitable powers.

Appeal from Surrogate's Court, New York County.

In the matter of the estate of Ella F. Bunting, deceased. Compulsory accounting on the petition of Gerardine H. Hickok. Appeal by the petitioner from a decree of the Surrogate's Court dismissing the objections to an account and judicially allowing the same as finally settled. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, O'BRIEN, and LAUGHLIN, JJ.

Alfred B. Cruikshank, for appellant.

Tompkins McIlvaine, for respondent.

HATCH, J. Ella F. Bunting died November 24, 1899, leaving a last will and testament, which was duly admitted to probate, and Elizabeth M. Bunting and Jennie R. B. Moore, her sisters, were appointed executors. There was due to the petitioner at the time of the death of the testatrix the sum of $3,000 and interest upon a promissory note, made by the testatrix in her lifetime, and before the transfers hereinafter mentioned. A short time before her death the testatrix transferred to her sister Elizabeth M. Bunting, without any consideration being paid therefor, all of her personal property, amounting to the sum of $10,000 and upwards. On October 12, 1903, the petitioner obtained a judgment against the executors of the testatrix for the amount of her note and interest. This judgment, upon an appeal to this court, was affirmed. 92 App. Div. 167, 86 N. Y. Supp. 1059. An appeal was taken to the Court of Appeals, which is still pending. Relying upon the judgment which the petitioner had obtained, she made an application to the Surrogate's Court to compel the executors to file their account. Thereupon they filed an account, in which they stated that the testatrix left no property whatever, and that the executors had been obliged to pay her funeral expenses. To this account the petitioner filed objections, claiming that the decedent left a large amount of personal property; that such property was transferred by her to Elizabeth M. Bunting shortly before her death, without consideration, and in fraud of the rights of creditors, of whom the petitioner was one; and, as stated in the objection, "the said contestant now disaffirms and treats as void the said transfers, and each of them, and demands that they be disaffirmed and treated as void in this proceeding." Under this objection the petitioner asked that the surrogate try and determine whether the transfers were void, as having been made in fraud of the rights of the petitioner, and, if so determined, to set the same aside, and decree that the executors be surcharged with the amount and value of such property in their account, with at least a sum sufficient to pay the amount of the plaintiff's judgment. The surrogate determined that no jurisdiction resided in the Surrogate's Court to try and determine such question, and thereupon dismissed the objections. This appeal is taken from the decree entered thereon.

The determination of the surrogate was clearly right. The jurisdiction which the petitioner sought to invoke was in every essential aspect equitable in character, as the judgment for which the petitioner asked could only proceed from a court exercising general equity powers and jurisdiction. It has been settled by repeated adjudication that the general equitable powers of a court of equity have not been conferred upon Surrogate's Courts and therefore no authority exists in it to exercise such power. Matter of Randall, 152 N. Y. 508, 46 N. E. 945. In Matter of U. S. Trust Co., 80 App. Div. 77, 80 N. Y. Supp. 475, the same doctrine was announced. Therein was involved the question of a conveyance by a remainderman of his interest in the estate to the life tenant,

and the latter, after such conveyance, released to himself his interest in the income of the share of the estate so conveyed to him, and then conveyed back to the remainderman one-third of the estate so conveyed. The remainderman thereupon began proceedings in the Surrogate's Court to compel judicial settlement of a trustee's account, and demanded a decree that he be paid the share of the estate so conveyed. This court held that the Surrogate's Court was without power to pass upon and adjudge as to the validity of the conveyance and release, as it involved the exercise of general equitable powers, of which that court was not possessed. Upon appeal to the Court of Appeals (175 N. Y. 304, 67 N. E. 614), that court, while affirming the judgment, disagreed with the conclusion that the disposition of the question thus presented necessarily involved the exercise of general equitable powers, and the court held, while admitting the doctrine that a surrogate has no general equitable jurisdiction, that the power to be exercised in the particular case was incidental to the authority to settle the accounts conferred by the statute, and that, therefore, it had such power, whether legal or equitable, as was necessary to accomplish that result. In discussing the subject, the court said:

"It must be borne in mind that there is no attempt made here to impeach or set aside the conveyances. The Surrogate's Court would have no jurisdiction over such issues, and to get that relief it would be necessary to resort to a court of equity."

This is the last utterance by the Court of Appeals upon this subject to which our attention has been directed. The case itself shows that not only was there no attempt therein made to impeach the validity of any transfer, but the sole question was, their validity being conceded, what, under the statute, was their effect upon the trust, and in upholding the power to determine such question the court went to the extreme limit in sustaining the surrogate's jurisdiction. In the present case the petitioner asserts the right to litigate in the Surrogate's Court, as in an action, the validity of the transfers of this property. The exercise of such power is condemned by the case last cited as well as others.

The petitioner insists, however, that she has the right by virtue of the provisions of section 7, c. 417, p. 509, Laws 1897 (being the personal property law), to treat as void and resist these transfers. The contention of the petitioner seems to be that the Legislature by this statute has conferred upon a party attacking such transfers the right to have their validity questioned by the surrogate through a mere mental operation, accompanied by a declaration indicating that he treats such transfers as void, and, so acting, confers power upon the surrogate to try such question, and conclude that they are in fact void. Manifestly, such cannot be the meaning of this statute. Its proper construction was the subject of consideration by this court in Montgomery v. Boyd, 78 App. Div. 64, 79 N. Y. Supp. 879. Therein it was held that a creditor had the same rights with respect to the disaffirmance of a transfer as had an executor, administrator, receiver, assignee, or trustee, and that thereunder such creditor might maintain an action to disaffirm, treat as void, and resist such transfer or conveyance without having first obtained a judgment, and could in such action not only dis-

affirm and attack the transfers, but have his claim as a creditor established therein. This gave a right to the creditor which did not before exist, as prior thereto, in order to have standing to attack a conveyance or transfer as being in fraud of the rights of creditors, such creditors must first have obtained a judgment. The creditor may resist in any form or manner the fraudulent transfer, and treat the same as void, so far as he is able to resist without action; but before he can reach the property transferred, if possession has been taken by the transferee, it must be through the instrumentality of a court of equity, wherein mere mental attitude can have no effect. Assuming, however, that the Legislature intended to confer such power and authority upon the Surrogate's Court as is claimed for it by the petitioner, the statute would be clearly condemned by the provisions of section 15, art. 6, of the Constitution. So far as applicable, this section reads:

"Surrogates and Surrogates' Courts shall have the jurisdiction and powers which the surrogates and existing Surrogates' Courts now possess, until otherwise provided by the Legislature."

We have already seen by the authorities cited that Surrogates' Courts neither before nor since the adoption of this provision of the Constitution possessed general equitable powers, and there exists no authority in the Legislature to confer it upon them. They have such jurisdiction, and such only, as they possessed at the time of the adoption of this article, and may exercise such jurisdiction until otherwise provided by the Legislature. The language excludes authority to add to the jurisdiction possessed by such courts. The only power reserved in the Legislature is to regulate, take away, cut down, or limit the jurisdiction thus conferred; but no authority exists to add to it. If it did, the Constitution would not have imposed any limitation or be a bar to the conferring of the most ample jurisdiction, both legal and equitable, which could be provided by law. Manifestly, such is not its construction. It may withhold power, but it cannot grant it beyond the limitation of its exercise existing at the time when the Constitution was adopted.

It follows that the surrogate was correct in the determination which he made, and the decree appealed from should therefore be affirmed, with costs to the respondent.

VAN BRUNT, P. J., and PATTERSON and O'BRIEN, JJ., concur.

LAUGHLIN, J. I concur, except as to discussion of the power of the Legislature to extend jurisdiction, which I think is not essential to the decision.