(64 App. Div. 385.)

SEXTON v. SEXTON et al.

(Supreme Court, Appellate Division, Second Department. October 4, 1901.)

1. ADMINISTRATRIX—ASSETS—PERSONAL CLAIM—SURROGATE—JURISDICTION.

Under Code Civ. Proc. § 2739, conferring on surrogates jurisdiction of a contest between an accounting executor or administrator and any other parties respecting assets to which the personal representative lays claim individually or otherwise, the surrogate's court has jurisdiction to settle an administratrix's account, in which she returns certain money as assets of the estate, but also claims it as her own as against other heirs.

2. SAME—SURROGATE'S ADJUDICATION—CONCLUSIVENESS.

Where a surrogate's court first obtains jurisdiction, in settling an administratrix's account, of her personal claim to certain assets of the estate as against other heirs, and adjudicates against her, such judgment is conclusive on her in a proceeding afterwards commenced by her in the supreme court to enforce her claim.

Appeal from special term, Kings county.

Action by Maggie Sexton against Frank Sexton and others. From a judgment in favor of plaintiff, defendants appeal. Reversed.

Argued before GOODRICH, P. J., and WOODWARD, HIRSCHBERG, and SEWELL, JJ.

Richard A. Rendich, for appellants.

J. F. Moissen, for respondent.

SEWELL, J.   The defendants appeal from a judgment of the special term which determines that moneys at the time of the decease of Julia Sexton, standing in her name and to her credit, were the property of the plaintiff.   The action is brought by a daughter of Julia Sexton, deceased, against the other heirs at law.   The plaintiff complains that she is administratrix of the estate of Julia Sexton, who, at her decease, had certain moneys on deposit in a savings bank, originally deposited by the plaintiff with deceased for safe-keeping; that doubts have arisen as to the ownership, and that a claim has been made thereto by the defendants, her brothers and sisters; and plaintiff demands a judgment or decree of the court adjudging the moneys to be her property individually.   The complaint was verified on January 15, 1900.   At the opening of the trial the defendants moved to dismiss on the ground that the court did not have jurisdiction, that jurisdiction was vested in the surrogate's court, and that the surrogate's court had first obtained jurisdiction.   The court reserved its decision.   Thereupon plaintiff gave evidence tending to establish her earning of certain moneys, their deposit with her mother, and declarations of the mother as to plaintiff's ownership thereof.   At the close of plaintiff's case the motion for dismissal was renewed, and the decision was again reserved.   Thereupon plaintiff read in evidence the accounting proceeding in the surrogate's court by the plaintiff as administratrix of Julia Sexton, the objections filed to the account, the order of reference thereunder, the report of the referee, the confirmation of the report by the surrogate on December 23, 1899, the exceptions of the administratrix to the report of the referee, and her findings submitted for the referee's signature.   After a renewal of the motion to dismiss upon the grounds stated and upon the additional grounds that the matter had been adjudicated by the surrogate's court, and that no evidence of fraud had been shown, the plaintiff rested.   The court directed that all of the grounds of dismissal be stated upon the brief, and subsequently gave the judgment from which this appeal is taken.

The learned special term ruled that, if the claim were one against the estate as for a debt owing to the plaintiff by the intestate in her lifetime, the surrogate's court had jurisdiction, and that the proceedings on the accounting would have been a bar to this action; but that the claim was not of this character; that the money belonged all of the time to the plaintiff; and that her mother was but the medium of deposit, which deposit plaintiff was entitled at any time, either before or after the death of her mother, to demand and to receive from the bank.   It further ruled that, as the mother never claimed the money, and therefore no cause of action ever arose against her in favor of the plaintiff, it could not be said that the plaintiff has now, or ever had, a claim or debt against the estate.   It further ruled that, although the plaintiff drew out the money from the bank as administratrix, and treated it for a while as part of the assets of her mother's estate, "such ill-advised action" did not deprive her of her right to claim absolute ownership from the very moment she placed the money in her mother's hands, and that, therefore, the surrogate's court had no power to decide the ownership of

the money, and the plaintiff could challenge its jurisdiction at any time. The plaintiff, as administratrix, rendered her account in the surrogate's court. Schedule A contains the "amount received by administratrix from bank, including interest after grant of letters, April 19, 1895, $1,535," which is stated to be "the property of the estate." Schedule C contains a statement showing various payments for personal and other expenses. Schedule E reads: "The heirs at law of decedent having made and signified their love and affection for administratrix in giving her their entire estate as a gift, I have applied the same for the purposes mentioned in Schedule C." In Schedule G the administratrix states that her former attorney told her that her brothers and sisters had "all signed off to me, and that the whole money was mine, and that I could do with it as I pleased"; and that, "the rights of my brothers and sisters having become vested in me by their having given me the same as appears herein, and now, after the lapse of three years, for some unknown reason to me, want to repudiate their gift to me, never having from the time of doing so up to the time of asking for this accounting pretended or claimed any interest, but, on the contrary, they always asserting that the estate belonged to me." She then states that she made a claim of $80 for nursing the deceased, and that she does "submit to the court the disposition of all matters mentioned in this accounting," and closes with the statement: "Administratrix was a school teacher for a long time, and placed all her earnings in the hands of decedent for safe-keeping, and these earnings constitute the estate herein, all of which belongs to administratrix." The next of kin filed objections, which, inter alia, denied the allegations contained in Schedule D, evidently meaning G, inasmuch as they are described in specified terms. Thereupon the learned surrogate ordered that the account be sent to a referee to examine the same, and to determine all questions arising upon the settlement which the surrogate has power to determine. The referee heard all parties, and reported that, after due consideration of the proof on both sides, and after disallowing certain items of the account, the said money in the bank was the property of the deceased, and that no gift thereof to the administratrix was made by the contestants, but that such money was the estate of the deceased, and should be so administered. The administratrix excepted, but the report was confirmed.

I think that the error of the learned special term consisted in wholly disregarding the force of the proceeding in the surrogate's court. It appears that the plaintiff, as administratrix, collected this money, returned it as the estate of the testatrix, and then sought to establish a claim against it as her personal property; and, second, that her father, brothers, and sisters made gift of their interest therein to her, and she necessarily sought a decree of the surrogate on the accounting accordingly. She did not appear in the surrogate's court as a claimant to equitable relief, but as administratrix, claiming the right to retain as her own the money she had collected and returned as an asset of her mother's estate. The same question was presented in Boughton v. Flint, 74 N. Y. 476, where the court said:

"On this question of jurisdiction the appellant makes the further point that the claim of the executrix for $800, held on deposit for her by the testator, was one cognizable only in equity, and that, conceding that a surrogate has jurisdiction to decide upon disputed claims of an executrix, such jurisdiction extends only to such claims as are enforceable in courts of law, and not to such as require the interposition of a court of equity, a surrogate having none of the powers of a court of chancery. If the claim of the executrix were to equitable relief of any kind, there would be force in this objection; but where she claims only the right to retain out of the assets of the estate a sum of money as belonging or due to her, it can make little difference whether her right to it depends upon legal or equitable principles."

Express power is conferred upon the surrogate to determine upon the judicial settlement of the account of an executor or administrator, a contest between the accounting party and any of the other parties respecting property alleged to belong to the estate, but to which the accounting party lays claim either individually or as the representative of the estate. Code Civ. Proc. § 2739. This section substantially embodies the rule under the Revised Statutes. 2 Rev. St. p. 88, § 33; Id. p. 95, § 71; Id. p. 220, § 1, subds. 3–6. Under the general powers granted to the surrogate in these sections to direct and control the conduct and settle the account of executors and administrators, to decree distribution, and to settle and determine all questions concerning any claim or distributive share, it was held in many cases that a surrogate hear and determine all claims against the estate in which the executor or administrator is interested, whether legal or equitable, and that the statute made it his duty to settle and determine all questions concerning any claim or distributive share. Hyland v. Baxter, 98 N. Y. 610; Riggs v. Cragg, 89 N. Y. 479, 489; Shakespeare v. Markham, 72 N. Y. 400; Kyle v. Kyle, 67 N. Y. 400; Jumel v. Jumel, 7 Paige, 591. In the case first cited the court said:

"The fact that the question is an equitable one, and depends upon equitable principles, is not a ground of objection to the jurisdiction. The surrogate's court is a court of limited powers and jurisdiction, but it has jurisdiction to determine questions, either legal or equitable, arising in the course of proceedings in the execution of powers expressly conferred, and which must be decided therein."

The surrogate's court is the proper tribunal to pass upon and try the validity of the respondent's claim. It first obtained jurisdiction of all the parties interested in this particular estate, and, although the supreme court has concurrent jurisdiction in the premises (Sanders v. Soutter, 126 N. Y. 193, 27 N. E. 263), the pending of the proceeding for an accounting before the surrogate is a valid objection, and must be held to be a bar to this action.

The judgment should be reversed, with costs. All concur.