July 1, 1902, and approved by the mayor July 14, 1902, and known as "Ordinance No. 372," an amendment to part 28, § 144, of the Building Code. The defendant takes his appeal on three grounds: First, the proper remedy here, if any, is civil, not criminal; second, under a proper construction of the ordinance above named the defendant has not violated it; third, the ordinance, under the construction contended for by the people, is repugnant to the Constitution of the United States and of the state of New York.

Ferdinand I. Heber, for appellant.

William Travers Jerome, Dist. Atty., for the people.

O'SULLIVAN, J. The defendant is charged with the violation of section 144 of the New York Building Code, in that he affixed to a business building an ordinary business sign without first obtaining a permit from the superintendent of buildings. The section of the Building Code mentioned specifies, first, the height to which "fences, signs and billboards" may be erected when of wood; second, it specifies the height of such structures when of metal; third, it defines "sky signs"; fourth, it specifies the character of construction required for "sky signs"; fifth, it requires "all fences, signs, billboards and sky signs" to be erected within the building line and to be properly braced and constructed. It then provides that a permit shall be obtained from the superintendent of buildings "before the erection of any fence, sign, billboard or sky sign shall have been commenced."

It is apparent, on a reading of the section, that it has application only to the class of signs known as "billboards" and "sky signs." All other signs are regulated as to place of erection and method of fastening by section 198 of the General Ordinances. The two sections are not conflicting, and, when read together, make a reasonable system for the regulation of the erection of signs. The requirement that a permit be obtained has reference only to the class of signs specified in section 144. All other signs may be attached to a building without other authority than the consent of the owner. This being the view of the court, it is unnecessary to examine the questions learnedly discussed by counsel.

The facts stated in the information do not constitute a violation of the Building Code, and the judgment is therefore reversed.

Judgment reversed.

---

(51 Misc. Rep. 260.)

### In re ARCHER'S ESTATE.

(Surrogate's Court, New York County. June, 1906.)

1. EXECUTORS AND ADMINISTRATORS—ACCOUNTING.

    Under Code Civ. Proc. § 2731, on an accounting by an executor the court may determine whether property transferred to him by the testatrix, his mother, belonged to the estate or to the executor.

    [Ed. Note.—For cases in point, see Cent. Dig. vol. 22, Executors and Administrators, §§ 2003, 2004.]

2. SAME—ASSETS OF ESTATE.

    Where testatrix shortly before her death transferred certain property to her son, her executor, and there is a statement of the executor that the property was transferred to him because she could not trust her other

children, and he voluntarily applied a large part of it to a mortgage on his mother's property, it justifies a finding that the transfer to him was in trust to apply that part to such payment for the common benefit of the family, but not that the balance belongs to the estate.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 22, Executors and Administrators, § 308.]

**3. SAME—ACCOUNTING—PAYMENTS TO ATTORNEY.**

Payments by an executor to an attorney for services which should have been rendered by the executor will not be allowed.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 22, Executors and Administrators, § 455.]

**4. SAME.**

A bill for attorney's services in endeavoring unsuccessfully to remove a coexecutor will not be allowed out of the estate.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 22, Executors and Administrators, §§ 448–460.]

In the matter of the estate of Frances E. Archer, deceased. Proceeding for the judicial settlement of the executor's account. Decree rendered.

Arthur Furber, for executor.

W. Stebbins Smith and Irving J. Joseph, for objectors.

Adrian T. Kiernan, referee.

THOMAS, S. Shortly before the death of the testatrix, and shortly after she had executed a will in which she nominated her son, George W. Archer, as one of the executors, she made a written assignment to said George W. Archer of accounts in a savings bank, upon which he collected $6,677.50. On this accounting of George W. Archer, as executor, one of the issues raised is upon an allegation of the objectant that the moneys so transferred were property of the estate, and that said assignment was not intended as an absolute transfer thereof. This issue was determined by the referee against the executor, and he finds as a conclusion of law that the account of the executor should be surcharged with the sum of $6,677.50, and that he should be credited with $5,000 paid out by him on account of the estate. It is conceded that $5,000 of this money was used by the executor in making part payment of a mortgage lien upon real property of the testatrix, but it is contended that the money, being personalty, was improperly disbursed in aid of the realty. The devisees and the legatees under the will are the same persons; all of the estate being directed to be divided among them.

The referee correctly determined that the issue between the executor as an individual and the other parties interested in the estate, as to whether the fund in question belonged to the estate or to him, may be tried in this court. The statute provides that:

"Where a contest arises between the accounting party and any of the other parties respecting property alleged to belong to the estate, but to which the accounting party lays claim * * * individually, * * * the contest must * * * be tried and determined in the same manner as any other issue in the Surrogate's Court." Code Civ. Proc. § 2731.

In the absence of any necessity for relief of a kind specially administered in a court of equity, it can make little difference whether the just

determination of the questions involved depends upon legal or equitable principles. The direction of the Legislature that the "contest must be tried and determined" by the surrogate carries with it, as a necessary inference, that the controlling rules of substantial justice shall be applied by the surrogate, and that he is vested with all power necessary for that purpose. Sexton v. Sexton, 64 App. Div. 385, 72 N. Y. Supp. 213, affirmed 174 N. Y. 510, 66 N. E. 1116; Neilley v. Neilley, 89 N. Y. 352; Boughton v. Flint, 74 N. Y. 476; Kyle v. Kyle, 67 N. Y. 400; Matter of Ammarell, 38 Misc. Rep. 399, 77 N. Y. Supp. 932. But the burden of proof to establish that the written assignment was not what it purported upon its face to be rests upon the objectant. The executor testified that the assignment was made to him by his mother "because she could not trust any of her other children." He voluntarily used $5,000 of it for the common benefit of all the family, and to that extent recognized a duty, or trust. That is all of the evidence upon the subject. It is sufficient to support a finding that the assignment was taken subject to a trust to expend $5,000 to protect the real estate, with the result that that sum shall be placed on both sides of the executor's account, but it is not sufficient to charge the executor with the $1,677.50 in dispute. The exception must therefore be sustained to this extent.

The services of the attorneys, for which $425 was paid (fifth finding of fact and conclusion C), were largely services not of a legal character, which should have been performed by the executor personally. They were all in connection with the adjustment and collection of $3,762 as a loss on a fire insurance policy, and the repair and rebuilding of the insured property. A professional insurance adjuster, an architect, and a builder were also employed and paid. There was no litigation whatever. The allowance on this claim of $218 made by the referee is quite sufficient to cover all services of a kind for which a lawyer should have been employed. The exception to this is overruled.

The item of $554.30 for services of counsel (eighth finding and conclusion F) is based upon a bill for $1,111.16, paid only to the extent of $554.30. This bill is mainly for services rendered in a proceeding in this court commenced upon a petition of the executor to revoke the letters granted to his sister, the executrix, which proceeding was not successful. No payment for these services can be made from the estate. One executor cannot be permitted to use the funds of an estate in pressing false or insufficient charges against his coexecutor in an unsuccessful attempt to obtain exclusive control for himself. The final order denying the relief sought establishes that the litigation was not necessary or for the benefit of the estate. Some few of the items in the bill are for other matters, and I will hear counsel and take such evidence as may be offered as to what, if any, allowance should be made for them. The exception to this item is sustained.

The item of $1,099.66 paid to Mr. Smith for services as an attorney, and allowed at $750 (ninth finding and conclusion G), is based on a bill for a large amount. The bill conveys little information, and the oral evidence scarcely any, as to the nature of the services rendered; but I gather that some of the charges concern the unsuccessful attempt

to revoke the letters of the executrix and are not allowable, on the principles already stated, and that some of the others are of doubtful propriety. The exception to this item is sustained, and further evidence and hearing can be taken and had before me.

All other exceptions to the referee's report are overruled. The further hearing before me may be noticed for July 5th, at 10:30 a. m.

Decreed accordingly.