[5] In such a case costs are in the discretion of this court, and I think should be awarded to the appellant. An order may therefore be prepared reversing the judgment, and granting a new trial herein before the same justice at a date to be fixed when the order is signed, and awarding costs to the appellant herein.

Judgment reversed, and new trial granted, with costs to appellant.

_____

(92 Misc. Rep. 113)

In re KENT.

In re RUTTER'S WILL.

(Surrogate's Court, New York County.  October, 1915.)

1. Courts ⬥⟹201—Probate Courts—Surrogates—Jurisdiction.
　　The granting of jurisdiction over accountings to surrogates carries with it such legal and equitable powers as are incidental and material to an efficient exercise of that jurisdiction.
　　[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 86, 87; Dec. Dig. ⬥⟹201.]

2. Courts ⬥⟹202—Probate Courts—Surrogate—Reference.
　　Code Civ. Proc. § 2536, providing that the surrogate may appoint a referee to examine an account rendered, to hear and determine all questions arising on the settlement of such account which the surrogate has power to determine, confers no authority upon him to refer part of an account and objections thereto to a referee.
　　[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 480–486; Dec. Dig. ⬥⟹202.]

3. Judgment ⬥⟹644—Previous Adjudication—Judicial Settlement of Account.
　　In a suit for the judicial settlement of the account of a testamentary trustee, the trustee was precluded from filing an additional affidavit showing that certain debts were due to the estate, apparently constituting advancements to the heirs, where such advancements had been previously judicially determined and finally settled in pursuance of Code Civ. Proc. § 2738, providing that advancements must be adjusted by a decree for distribution in the Surrogate's Court.
　　[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1157; Dec. Dig. ⬥⟹644.]

4. Executors and Administrators ⬥⟹314—Partial Distribution—Action for Accounting.
　　In an action for accounting by trustees under the will of a decedent, a distributee was entitled to delivery of part of her share of the estate, where such partial distribution could not affect the rights of the trustees.
　　[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 1274–1297; Dec. Dig. ⬥⟹314.]

Petition by Beatrice R. Moore against Samuel J. Riker, Jr., and others, for a judicial settlement of their accounts as trustees under the will of Thomas Rutter, deceased. Before the return date of the citation the trustees voluntarily filed their account, with a petition for a judicial settlement. Upon motion by Beatrice R. Moore for delivery of part of her share of the residuary personal estate, motion by the trustees for an order directing the affidavit of Samuel J. Riker, Jr., to be filed as part of the record, and motion for the appointment of

a referee to hear and determine the issues raised by the objections filed to the trustees' account. Motion for partial distribution granted, motion to file the affidavit of Samuel J. Riker, Jr., denied, and motion for reference conditionally denied.

Davies, Auerbach & Cornell, of New York City (Joseph S. Auerbach and Charles H. Tuttle, both of New York City, of counsel), for petitioner.

Leon W. Gibson, of New York City (Lewis L. Delafield, of New York City, of counsel), for testamentary trustees.

FOWLER, S. Here are three motions: On July 22, 1915, Beatrice R. Moore filed a petition praying for the delivery to her of part of her one-fourth share of the residuary personal estate. She now moves accordingly. This motion (No. 1) is opposed by the trustees.

On September 28, 1915 (the return day of the accounting proceeding), a motion was made on behalf of the trustees for an order directing that a certain affidavit of Samuel Riker, Jr., be filed as part of the record in the accounting proceeding, "to the end that the matters therein referred to may be investigated by the court and that such direction with respect to such matters may be given as shall be legal and proper." This motion (No. 2) is opposed by the objectant, Beatrice R. Moore.

On September 28, 1915, the trustees applied for the appointment of a referee to hear and determine the issues raised by the objections filed to the trustees' account. This motion (No. 3) is opposed by Beatrice R. Moore, who requests the surrogate to hear the entire matter or else to dispose in the first instance of all questions of law.

It would appear that Thomas Rutter died a resident of New York county May 3, 1895. His last will and testament was admitted to probate by this court May 24, 1895. Letters testamentary thereon were issued to John R. Rutter, Thomas B. Kent, and Edward Ritzema De Grove, May 25, 1895. The sixth clause of Mr. Thomas Rutter's will bequeathed and devised his residuary estate in trust to pay the net income therefrom to testator's wife, Georgianna, and at her death to divide the same into as many parts as there should then be children of the testator and deceased children leaving issue, with a separate and distinct trust for the benefit of each child during the life of such child. In the event of the death before testator's widow of any such child, leaving issue, such deceased child's share was directed to be paid to such issue on the death of the widow.

Testator's widow, Georgianna Rutter, died January 23, 1914. Three of testator's children survive her, namely, J. Edgar T. Rutter, Mrs. Maud R. Garr, and Mrs. Cora R. Kent. Mrs. Beatrice R. Moore, a daughter of John R. Rutter, a deceased son of the testator, was the only issue of a deceased child of testator living at the death of the widow. On November 12, 1897, a decree was made by this court judicially settling the accounts of John R. Rutter, Thomas B. Kent, and Edward Ritzema De Grove as executors of the last will and testament of the testator. All parties interested in the estate were cited to attend this accounting. The decree of November 12, 1897, discharged

the executors and directed that the balance of the estate be paid to the trustees to be administered according to the trust provisions of the will.

Of the executors and trustees who originally qualified, John R. Rutter (testator's son) died April 26, 1899, and Edward Ritzema De Grove died July 17, 1911. On August 27, 1911, Samuel Riker, Jr., was appointed substituted trustee. The trustees now acting are Thomas B. Kent and said Samuel Riker, Jr. Upon the death of the widow, January 23, 1914, Beatrice R. Moore, the issue of the deceased son of the testator, claims to have become entitled, under the terms of the will, to one-fourth of the residuary estate. If so, upon the happening of the same contingency the three children of the testator, became entitled to a division of the residuary estate and the erection of separate trusts for each of them. On August 13, 1914, Beatrice R. Moore filed in this court a petition to compel the said Samuel Riker, Jr., and Thomas B. Kent, as trustees, to render and judicially settle their account. A citation was duly issued, and on or before the return day the trustees voluntarily filed their account with a petition for its judicial settlement. Mrs. Moore and all other parties interested were cited. Objections to the said account were filed by Beatrice R. Moore and J. Edgar T. Rutter, a son of the testator. On August 2, 1915, Beatrice R. Moore obtained an order for an examination of the trustees for the purpose of framing further objections to the account. No order has yet been made consolidating the voluntary accounting proceeding and the compulsory accounting proceeding.

I will dispose of the motions enumerated above in their inverse order. The motion to refer the issues raised by the objections to the account is coupled with a request that the surrogate in the first instance dispose of all questions of law and refer only the matters of fact to a referee. I am more than doubtful of my power to split up a reference. No doubt a chancellor, or a judge invested with full and complete equity jurisdiction, could adopt this course last indicated. But the surrogate's equitable powers are not, I think, so complete. Let us glance for a moment at the equitable jurisdiction of the surrogates in proceedings to settle judicially the accounts of testamentary representatives.

The extent of the equitable jurisdiction of the surrogates of New York in the course of the settlement of the accounts of the representatives of persons deceased is not doubtful prior to the Revised Statutes. Long prior to our Revised Statutes of 1830 the courts of probate in New York had enjoyed a limited and inherent jurisdiction to require the personal representatives of a deceased person to file an inventory and an account of their proceedings. The jurisdiction of compulsory accountings was then closely connected with the allied power to require the production of an inventory by executors and administrators. So much so was this the case that as late as 1841, eleven years after the Revised Statutes took effect, Chief Justice Bronson of this state saw little difference between an inventory and an account, thus showing that legal traditions tend to linger on in the interstices of the law. Bloom v. Burdick, 1 Hill, 130, 37 Am. Dec. 299.

The jurisdiction of the original courts of probate in New York over inventories and accounts was defined by the jurisdiction of the ecclesiastical courts known to the common law of England after the reign of Henry VIII. Matter of Martin, 80 Misc. Rep. 17, 21, 141 N. Y. Supp. 784. That the courts spiritual did originally entertain such objections cannot be doubted. Smith v. Pryce, 1 Lee, 569; Brown v. Atkins, 2 Lee, 1; Hackman v. Black, 2 Lee, 251; Phillips v. Bignell, 1 Phill. 239; Gale v. Luttrell, 2 Addams, 234; Telford v. Monson, 2 Addams, 319, 330; 4 Burns, Ecc. Law, 609; Toller on Ex'rs, 246, 489, 490; 1 Story, Eq. Jurisp. §§ 536, 537. The surrogates' inherent and original jurisdiction (independent of a particular statute) over accountings was, I think, recognized in Bevan v. Cooper, 72 N. Y., at pages 328, 329. Such jurisdiction was regarded as derived from the original probate courts of New York or as annexed to the grant of a probate jurisdiction.

It will be remembered that subsequent to the Reformation and the reign of King Charles I, in the continuing conflict between the courts secular and the courts spiritual, it was first made a question whether the ecclesiastical courts of probate could entertain objections to the inventory at the suit of a legatee; the only instance in which a jurisdiction over accounts was then claimed by the spiritual courts. 1 Story, Eq. Jurisp. § 537. The jurisdiction of the ecclesiastical courts over accounts was denied in Catchside v. Ovington by Lord Mansfield. Bur. Mans. 1922. Such jurisdiction was, however, afterward vindicated by Sir John Nicholl in a judgment which is generally regarded by those versed in the jurisdiction of courts as one of the most notable in our jurisprudence. I refer to Telford v. Morison, 2 Addams, 321. I have very often read that notable opinion, and always with increasing admiration for the courage and the dignity of that very great judge under most trying conditions. The ecclesiastical courts in England thereafter continued, when not prohibited by the secular courts, to exercise a jurisdiction over objections to accounts. 4 Burns, Ecc. L. 424. The judgment in Telford v. Morison was, however, delivered only in the year 1824, or more than a century after the trichotomy of the old judicial establishment known to the common-law system had been finally transferred to New York, which, in spite of its origin and the title by the conquest of 1664, more closely than any other American colony adopted and adhered to the institutions of the common law, at least until our independence of the crown, when a new influence became manifest.

I have so often referred to the general jurisdiction of our courts of probate under the various New York governments that I will not repeat it. Cf. Matter of Martin, 80 Misc. Rep. 21, 141 N. Y. Supp. 784 et seq. I will confine myself here to their jurisdiction over accounts.

The act for regulating the fees of the re-established courts of this state, passed in the year 1785 (chapter 71, Laws N. Y. of 1785), recognized the continuing jurisdiction of surrogates to examine and prove inventories and accounts, for the surrogate is there authorized by law to take fees therefor. Coote in his work on the practice of the Ecclesi-

astical Courts gives a fair résumé of the practice followed in New York by the former surrogates on objections to inventories and accounts prior to the Revised Statutes. Such jurisdiction was limited, but settled by very well established rules unnecessary to discuss, but perpetuated in principle by the Revised Statutes of 1787 (2 J. & V. p. 71) and 1813 (1 R. S. 311, 444). The Revised Statutes of 1830 finally perpetuated some principles, but enlarged the jurisdiction (2 R. S. 91). The early Surrogates' Practices of this state are very silent on the question of the original jurisdiction of surrogates over accounts and generally are content to refer without comment to the latest statutes of the state. But the early reports very well indicate the practice in accountings, although there are many earlier cases in New York, as yet left unreported, which would disclose far more. Seymour v. Seymour, 4 Johns. Ch. 410; Guild v. Peck, 11 Paige, 475; Foster v. Wilber, 1 Paige, 537. The intimate connection of even the radical Revised Statutes with former practice is illustrated by the explanatory citations employed even after 1846 in such decisions as that in Gratacap v. Phyfe, 1 Barb. Ch. 485, Harris v. Ely, 25 N. Y. 138, 141, and Bevan v. Cooper, 72 N. Y. 317, 328, 329.

It was only with and subsequent to the Revised Statutes that the proceeding for a judicial settlement of accounts of representatives of a deceased by the surrogate tended to become a substitute of the former administration suit in chancery, or what is now called "a judicial settlement of the account." See 2 Woerner on Administration (2d Ed.) p. 1218. We find thereafter that the adjudications in accounting proceedings more rarely refer to the law anterior to the Revised Statutes themselves (see the overruled case of Westervelt v. Gregg, 1 Barb. Ch. 469; Stagg v. Jackson, 1 N. Y. 206. Yet as early as 1822 there was observable in this state a tendency to broaden by statute the original jurisdiction of surrogates in proceedings to settle accounts, and by statute of that year they were authorized to call executors to account for the proceeds of real estate sold by them for the payment of debts and legacies. Clark v. Clark, 8 Paige, 152, 35 Am. Dec. 676. But this act gave the surrogate no jurisdiction to take the account of trustees of a testamentary power not given to executors. McSorley v. McSorley's Ex'rs, 4 Sandf. Ch. 414; Matter of Hawley, 104 N. Y. 263, 10 N. E. 352.

The present jurisdiction of the surrogates in proceedings for the judicial settlement of final accounts of executors and administrators and testamentary trustees may then be justly said to begin with and date from the Revised Statutes of 1830. Such proceedings tended thereafter to become what they now are, practically the former administration suits in chancery. 1 Pom. Eq. Jurisp. §§ 77, 187, 235; chapter 9, Story, Eq. Jurisp. The Revised Statutes provided for the effect of a surrogates' decree in judicial accountings, making it conclusive in certain specified particulars upon the matters embraced in the account against all persons interested, but only provided they were cited or did not voluntarily appear. 2 R. S., 94, § 65, perpetuated by the Code (section 2742, C. C. P. of 1913); Joseph v. Herzig, 198 N. Y. 456, 92 N. E. 103; Chester v. Buffalo Car Mfg. Co., 183 N. Y.

425, 435, 76 N. E. 480; Matter of Killan, 172 N. Y. 547, 65 N. E. 561, 63 L. R. A. 95; Bowditch v. Ayrault, 138 N. Y. 222, 231, 33 N. E. 1067. The new Surrogates' Law would seem to enlarge the effect of such decrees. Section 2742, Code of 1915.

The powers of the Legislature to establish a summary remedy in the Surrogates' Courts for the settlement of the estates of deceased persons and to enable surrogates for that purpose to decide on all claims and matters affecting the estate seems not to have been doubted (Kidd v. Chapman, 2 Barb. Ch. 414), notwithstanding that the original jurisdiction of the courts of equity in New York included the same powers. As the jurisdiction of the Court of Chancery was fixed by the Constitution of the state, and the surrogates' jurisdiction of proceedings to settle judicially the accounts of representatives of estates tended really to detract from the regular equity jurisdictions so fixed by the Constitution, it was regarded as doubtful whether the Legislature could invest the Surrogates' Courts with such equity powers.

It is just at this point that the ancient jurisdiction of the surrogates of New York over accounts became important to constitutional principles, for if the surrogates had no original jurisdiction over accounts, a transfer of the jurisdiction of a constitutional court to the surrogates might have been unconstitutional. Alexander v. Bennett, 60 N. Y. 204; cf. Matter of Runk, 200 N. Y. 447, 94 N. E. 363, where there is a dictum purely obiter to the contrary. The amplification by the Legislature of an ancient jurisdiction stands doubtless on another principle, for then a concurrent jurisdiction is only added to a similar jurisdiction, as intimated in Matter of Runk, supra.

Little by little the Legislature by acts unnecessary now to specify has invested Surrogates' Courts in accounting matters with much of the jurisdiction exercised in the old court of chancery in administration suits. Sheldon v. Bliss, 8 N. Y. 34; Seaman v. Duryea, 11 N. Y. 328; Wood v. Brown, 34 N. Y. 337; Thomson v. Taylor, 71 N. Y. 217, 219; Hyland v. Baxter, 98 N. Y. 610; Garlock v. Vandevort, 128 N. Y. 374, 378, 28 N. E. 599; Matter of Schnabel, 202 N. Y. 134, 137, 95 N. E. 698. The history of administration suits in chancery and the story of the mode by which the Ecclesiastical Courts were deprived of their original jurisdiction over legacies are very well outlined, with some reference to the adjudications in Jenk's Short History of English Law, pp. 226–230. But the technical limitations on such administration suits are only to be found in the adjudications.

In a suit in chancery for the administration of assets the usual practice was to refer the matter to the master in chancery, to take an account of the debts, funeral expenses and pecuniary legacies, to compute interest, to advertise for creditors and legatees to appear and prove their claims within a limited time, and to take an account of the personal estate which might have come into the hands of the executors or of any other person, by his order or use, and that the personal estate be applied in payment of debts, funeral expenses and legacies in a course of administration. Hoffman, Ch. Pr. pp. 180, 181. A party dissatisfied with the report of the master in chancery might

file exceptions (Id., p. 184). In Thompson v. Browne, 4 Johns. Ch. 619, discussed by Hoffman at pages 187, 188, two propositions were laid down—one that where a creditor files a bill, either for himself or for all the creditors, the decree for an account is for the benefit of all the creditors, and in the nature of a judgment, and that all may come in and prove their demands, and that from the date of the decree the court will enjoin creditors from proceeding at law and will take jurisdiction of the sole distribution of the assets. In such distribution all judgments prior to the decree were preferred according to their priority in time, and all other debts ratably, without regard to legal priorities, and irrespective of whether the assets administered were legal or equitable.

In administration suits the executor or administrator was a necessary party if the suit affected the personalty. Story, Eq. Pl. § 171. Third persons who had possession of the personalty, or were liable to account therefor, under particular circumstances, might also be joined. For example, if there was alleged to exist collusion between such third persons and the legal representatives, or if the latter were insolvent or refused to collect the outstanding claim, or also, if the third person was a surviving partner of the decedent. Id. § 178. Heirs at law or devisees were necessary parties, if it was sought to charge the realty or to sell the realty. Where no heir could be found it was usual to make the attorney-general a party. Id. § 180 and note. If the object of the bill was to carry into effect the trusts created by the will, without establishing the will, a decree might be made in the absence of an heir. Id. § 181. Both executors and administrators must be parties. Id. § 218.

Administration suits were controlled by the rules then governing parties to bills and cross-bills. Cross-bills could not introduce new parties. 2 Daniell, Ch. Pr. § 1548, note. Here was a very distinct limitation on the jurisdiction of a court of equity, for if new parties could not be introduced the issues jurisdictional in administration suits were necessarily to be confined to the matters alleged in the original bill for administration. But the primary limitation on the equity jurisdiction in administration suits was that where a debt of a creditor was disputed, it must be first established at law.

Since the Revised Statutes the Legislature has proceeded to assimilate the jurisdiction of the surrogate to that of the court of chancery in suits for the judicial settlement of the accounts of executors and administrators. Chapter 576 of the Laws of 1910 was a great step forward (repealed by the Surrogates' Law of 1914). It provided as follows:

"The Surrogate's Court has also jurisdiction upon a judicial accounting or a proceeding for the payment of a legacy to ascertain the title to any legacy or distributive share, to set off a debt against the same and for that purpose to ascertain whether the debt exists, to affect the accounting party with a constructive trust, and to exercise all other power, legal or equitable, necessary to the complete disposition of the matter" (section 2472a, C. C. P. 1913.)

The idea that this enactment much enlarged the surrogates' jurisdiction has been generally entertained. Matter of Cary, 77 Misc. Rep. 602, 605, 138 N. Y. Supp. 682. That in some respects the surrogates'

equitable jurisdiction was larger than the jurisdiction of the chancellor in administration suits is apparent. That the surrogate had power before 1910 to ascertain who were legatees and distributees is not doubtful, but his jurisdiction to raise constructive trusts or to try disputed titles to legacies or distributive shares by reason of equitable considerations was due solely to the Act of 1910. Matter of Randall, 152 N. Y. 508, 46 N. E. 945; Matter of Monroe, 142 N. Y. 484, 37 N. E. 517; Matter of Will of Keleman, 126 N. Y. 73, 26 N. E. 968; Fulton v. Whitney, 66 N. Y. 557; Meeks v. Meeks, 122 App. Div. 461, 106 N. Y. Supp. 907; Matter of Losee, 119 App. Div. 107, 111, 94 N. Y. Supp. 1082, 104 N. Y. Supp. 1132.

In England, to this day, the remodeled probate courts possess no such large powers or jurisdiction as those now vested in the surrogates of New York state. In England proceedings for such accounts and distribution of estates lie only in the Chancery Division of the High Court of Justice, and if a creditor institutes such proceedings his debt, if disputed, must in some way be first established in an action by or against the executors. In re Powers, 30 Ch. D. 291. See 10th edition. Williams on Executors, vol. 2, pp. 1632, 1650. In Pennsylvania the issues arising on devises are not yet justiciable in the orphans' courts on an audit of an account, but all such matters go to the common pleas courts of that state for final decision and disposition. No jury trial is known in the probate courts of England or Pennsylvania. That the proceedings in England or Pennsylvania are less efficient or more dilatory and expensive than under the system employed in this state has never been asserted by any one familiar with the various jurisdictions.

[1] Notwithstanding the legislation of 1910 in this state, it is extremely doubtful that the powers of a court of equity even thereafter appertained to a Surrogate's Court (Matter of Randall, 152 N. Y. 508, 46 N. E. 945; Matter of Thompson, 184 N. Y. 36, 44, 76 N. E. 870; Matter of Schnabel, 202 N. Y. 134, 137, 95 N. E. 698; Matter of Hasbrouck, 153 App. Div. 394, 398, 138 N. Y. Supp. 620; Stilwell v. Carpenter, 59 N. Y. 414; Meeks v. Meeks, 122 App. Div. 461, 463, 106 N. Y. Supp. 907); or, as it is sometimes expressed by other courts, the Legislature had not yet made "chancellors out of surrogates" (Matter of Bolton, 159 N. Y. 135, 53 N. E. 756; Matter of Henderson, 157 N. Y. 429, 52 N. E. 183). From this class of adjudications cited we may infer that, even since the legislation of 1914, wherever the grant of equitable powers to a surrogate may be unconstitutional, or is now doubtful and not express, equitable jurisdiction will be denied to the surrogates. Nevertheless, the grant of jurisdiction to the surrogates over accountings is always held to carry with it such powers, legal and equitable, as are incidental and material to an efficient exercise of the jurisdiction. Riggs v. Cragg, 89 N. Y. 489; Hyland v. Baxter, 98 N. Y. 616; Matter of Underhill, 117 N. Y. 471, 472, 22 N. E. 1120; Matter of Wagner, 119 N. Y. 28, 31, 23 N. E. 200; Matter of U. S. Trust Co., 175 N. Y. 304, 309, 67 N. E. 614; Sexton v. Sexton, 64 App. Div. 385, 389, 72 N. Y. Supp. 213, affirmed 174 N. Y. 510, 66 N. E. 1116; Matter of Schnabel, 202

N. Y. 134, 95 N. E. 698. To have held otherwise would have been to defeat by judicial construction the obvious intent of the Legislature.

That the Legislature prior to the new law of 1914 had not yet conferred upon surrogates jurisdiction to decide some controversies which might arise in proceedings before the surrogates to settle the accounts of executors or administrators I thought apparent. For this reason I lately declined jurisdiction in an important matter. Matter of Watson, 86 Misc. Rep. 595, 148 N. Y. Supp. 902 et seq., affirmed 165 App. Div. 252, 150 N. Y. Supp. 776. But the Court of Appeals took a larger view in Matter of Watson of the new legislation than it had ever before taken, and it affirmed the jurisdiction of the surrogates over what had seemed to me a thitherto doubtful class of controversies (215 N. Y. 209, 109 N. E. 86). In England persons who possess themselves of property of the deceased cannot be made parties to proceedings against the executor. 2 Williams on Ex'rs (10th Eng. Ed.) 1650.

It is well known that before 1895 (chapter 595, Laws of 1895) the surrogates had no power to determine any controverted claims against the estate of a deceased person (Tucker v. Tucker, *43 N. Y. 136; McNulty v. Hurd, 72 N. Y. 520; Glacius v. Fogel, 88 N. Y. 434; Riggs v. Cragg, 89 N. Y. 479; Fiester v. Shepard, 92 N. Y. 251; Lambert v. Craft, 98 N. Y. 342; In re Ryder, 129 N. Y. 640, 29 N. E. 309; Matter of Callahan, 152 N. Y. 320, 324, 46 N. E. 486; Matter of Miles, 170 N. Y. 75, 62 N. E. 1084; Holly v. Gibbons, 176 N. Y. 520, 528, 68 N. E. 889, 98 Am. St. Rep. 694; Matter of Martin, 211 N. Y. 328, 330, 105 N. E. 546; Dayton on Surrogates [3d Ed.] 489), although in accounting proceedings by a creditor equity had ordinarily complete jurisdiction to determine the title of the alleged creditor. (Misner v. Strong, 181 N. Y. 163, 73 N. E. 965). Nor had the surrogates until 1895 power to determine the validity of claims of the estate against third persons, even though such third persons were parties to the accounting. In re Underhill, 117 N. Y. 471, 22 N. E. 1120; Meeks v. Meeks, 122 App. Div. 461, 462, 106 N. Y. Supp. 907. The surrogates' jurisdiction to determine in accounting proceedings claims of third persons to property claimed by the representatives of deceased persons was prior to 1910 also denied. Matter of Thompson, 184 N. Y. 36, 76 N. E. 870; Matter of Gall, 182 N. Y. 270, 278, 74 N. E. 875. Cf. Matter of McLoughran, 124 App. Div. 312, 108 N. Y. Supp. 934.

The surrogates' equitable powers over the proceeds of lands sold under a testamentary power and brought into court, for example, were very restricted prior to the year 1914 (Matter of McComb, 117 N. Y. 378, 382, 22 N. E. 1070), unless there was a conversion effected by the will (Matter of Caldwell, 188 N. Y. 115, 80 N. E. 663). A surrogate had, until recently, no adequate power to pass upon the validity of a devise. It was, however, then held that, where a testator undertook to create a trust in which the real and personal property were inseparably blended, the surrogate had power to construe such clause and declare the trust invalid and void in so far as it affects the personal property of testator. Matter of Trotter, 182 N. Y. 465, 75 N. E. 305. It will be remembered that until 1850 the surrogates had no

jurisdiction whatever over the accounts of testamentary trustees. Chapter 272, Laws 1850; Matter of Runk, 200 N. Y. 447, 94 N. E. 363; Matter of Hawley, 104 N. Y. 250, 10 N. E. 352.

Under the former law, for the purposes of distribution, the surrogate had an incidental power to construe a will in so far as it was necessary to determine to whom legacies should be paid (Matter of Verplanck, 91 N. Y. 439; Garlock v. Vandevort, 128 N. Y. 374, 28 N. E. 599), but he had no jurisdiction to compel a legatee to restore an overpayment on a legacy (Matter of Lang, 144 N. Y. 275, 39 N. E. 363), and no general jurisdiction to construe wills (Kirk v. McCann, 117 App. Div. 56, 59, 101 N. Y. Supp. 1093). But whenever the jurisdiction of the surrogate over accountings existed, in a case where complete relief might be had in the Surrogate's Court, the other courts of the state vested with concurrent jurisdiction would decline to exercise their own jurisdiction. Wager v. Wager, 89 N. Y. 161; Underwood v. Curtis, 127 N. Y. 523, 28 N. E. 585; Matter of Farrell, 125 App. Div. 702, 110 N. Y. Supp. 41.

Thus step by step the jurisdiction of the surrogates to pass upon controverted claims against estates has been enlarged by statute. Matter of Thompson, 184 N. Y. 44, 76 N. E. 870. But even now the mode is very strictly limited. Matter of Martin, 211 N. Y. 328, 330, 105 N. E. 546; Matter of Holzworth, 166 App. Div. 150, 154, 151 N. Y. Supp. 1072; Matter of Higgins, 91 Misc. Rep. 387, 154 N. Y. Supp. 670.

I have now outlined the growth of the equitable jurisdiction of the Surrogates' Courts in proceedings for the settlement of accounts of representatives of estates prior to the year 1914, when the "New Surrogates' Law" went into effect. That law contains more liberal provisions than any other act ever affecting the jurisdiction of the surrogates. By that law (section 2510, C. C. P. 1915) the surrogates are given jurisdiction—

"to administer justice in all matters relating to the affairs of decedents, and upon the return of any process to try and determine all questions, legal or equitable, arising [by or] between any or all the parties to any proceeding * * * in order to make a full, equitable and complete disposition of the matter by such order or decree as justice requires."

This is a very broad provision and was intended to be such. But as the new Surrogates' Law of 1914 was enacted under the old Constitution it is doubted, and I think with much reason, whether the Legislature had the power to enlarge the equitable jurisdiction of the surrogates of this state. Section 15, art. 6, Const. 1894; Matter of Bunting, 98 App. Div. 122, 90 N. Y. Supp. 786 (opinion of Hatch, J., concurred in by Justices Van Brunt, Patterson, and O'Brien). The appeal, it is to be observed, in Matter of Bunting, was dismissed in the Court of Appeals without opinion. 182 N. Y. 552, 75 N. E. 1128. Consequently this decision still confronts the profession of the law whenever the new equitable powers of the surrogates are drawn in question. But, for the reason stated in Matter of Thornburgh, 72 Misc. Rep. 619, 621, 132 N. Y. Supp. 268, ignoring for the present the constitutional question so serious to the bar and to litigants in this

court, let us inquire next what the new legislation portends. Are the surrogates now by virtue of the new legislation possessed of all the equitable powers of the chancellors in these statutory proceedings to determine judicially the accounts of executors and administrators? Has the Surrogate's Court really become a court of equity in proceedings to settle accounts? These are the great questions of the moment. That the new legislation apparently on its face confers most extended equitable powers cannot be denied. But very late decisions of the higher courts have already confined such grants of equitable powers to the few instances particularly specified in subdivisions 1 to 8, section 2510, C. C. P. Matter of Holzworth, 166 App. Div. 150, 151 N. Y. Supp. 1072; Matter of Ryder, 129 N. Y. 640, 642, 29 N. E. 309. Whether such an extended and multifarious equitable jurisdiction is expedient has been much doubted. Mr. Throop, when he revised the Surrogates' Law, was of the opinion that the surrogates ought not to be burdened by the trial of too many issues. See Throop's note to section 2742, C. C. P. But, whatever his power may be, the surrogate's jurisdiction over accountings still depends upon the presence of the real parties in interest as only those cited are bound by the decree. Matter of Killan, 172 N. Y. 547, 65 N. E. 561, 63 L. R. A. 95; Matter of Gall, 182 N. Y. 270, 74 N. E. 875.

[2] From the foregoing survey of the jurisdiction of the surrogates in proceedings to settle the accounts of testamentary proceedings it must be apparent that the surrogate is not in loco cancellarii and has not the extended equitable powers and jurisdiction of a chancellor. If this is so the surrogates' power to refer the issues arising in such proceedings is wholly governed by the statute, and by the statute only. Section 2536, C. C. P., regulates references by the surrogate. He may appoint a referee—

"to examine an account rendered; to hear and determine all questions, arising upon the settlement of such account, which the surrogate has power to determine."

I can find in this language no authority to refer part of an account and objections to a referee to hear and determine. While the chancellor undoubtedly had such power, the surrogate has it not.

[3] I come next to the consideration of motion No. 2 for leave to file an additional affidavit in the accounting proceeding. Samuel Riker, Jr., one of the trustees, makes application to have filed in the accounting proceeding an affidavit in which he states that:

"After the date of the filing of the account of the trustees in this proceeding there was brought to my attention a ledger kept by the said testator, Thomas Rutter, which said ledger contains certain entries which, although obscure and somewhat difficult to understand, seem to indicate that at the time of his death his son, John R. Rutter, since deceased, and J. Edgar T. Rutter were indebted to him in large sums of money."

Said affidavit further states the finding of certain papers purporting to be receipts signed by said John R. Rutter and J. Edgar T. Rutter, acknowledging payment or part payment of legacies and containing statements of advancements made to them by the testator. The trustees now move that said affidavit be filed—

"to the end that the same may be investigated and that the facts disclosed upon such further investigation shall be considered in directing any distribution of the estate under the terms of the will."

If the affidavit were filed, and if the court were inclined to make such·an investigation, all parties interested in the accounting proceeding would be entitled to notice of the application. The only parties who actually received notice of this motion are those who have appeared by attorney. Those parties required to be cited upon the accounting and who did not appear in the proceeding by attorney have received no notice of. this application. Proper and orderly practice would seem to require the trustees to file an amended or supplemental account setting forth the additional facts they desire to have appear in the record. An issue could then be raised by way of objections in the usual manner.

This is not a case of construction of a will, where an executor or trustee may ask for directions from the court. This is a matter where the trustees themselves are required to make a decision based upon their own judgment as to whether or not an error was made in the statement of advancements. Unless the trustees make such a decision, there is no way in which an issue can properly be presented to the court. This court has no power to instruct trustees in a matter resting in their judgment or discretion.

Aside from the question of practice, it appears that the trustees are precluded from now raising the question of the amount of these advancements. In schedule II of the account of the executors and trustees filed in this court June 14, 1897, among "the debts and claims owing to the said decedent at the time of his death collected by us as executors and the amounts realized therefrom" is the following:

"Claim against J. Edgar T. Rutter for one thousand seven hundred and ninety-seven dollars and sixty-three cents advanced to him by Thomas Rutter in sundry amounts at sundry times between the year 1890 and the year 1895, both years inclusive, collected on 25 November, 1895, $1,797.63."

And also:

"Claim against John R. Rutter for seven thousand nine hundred and fifty-eight dollars and sixty-eight cents, amount of balance to his debit, entered in the ledger of Thomas Rutter as of 3 May, 1895, the date of the death of Thomas Rutter, collected or settled as follows: $7,958.68."

The decree of November 12, 1897, judicially settled the account of 1897 as filed, and discharged the executors and trustees as to all matters embraced therein. Section 2738, C. C. P. (former section 2733), provides that advancements must be adjusted by a decree for distribution in the Surrogate's Court. Such an adjustment having been made by the decree of November 12, 1897, the matter of advancements must now be regarded as finally settled. Matter of Elting, 93 App. Div. 516, 87 N. Y. Supp. 833.

It will also be noted that the executors and trustees in their account of 1897 stated the total amount of advancements to the two sons of the testator down to the time of the testator's death. The judicial settlement of said account, therefore, bars the executors and trustees from questioning in a new accounting proceeding the correctness of

their previous statement of advancements. Chester v. Buffalo Mfg. Co., 183 N. Y. 425, 76 N. E. 480. In my opinion the application of the trustees to file the additional affidavit should at this stage be denied.

[4] I next approach motion No. 1, to wit, the application of Beatrice R. Moore for delivery of part of her share of the estate. This application is made under sections 2689 and 2690, C. C. P. (former sections 2804 and 2805). The trustees contend that this court has no jurisdiction to make the order applied for during the pendency of the accounting proceeding. It is said that the pending accounting proceeding has the same parties and involves the same issues as the application under consideration, and that therefore this application should be denied and Mrs. Moore should be remitted for relief to the accounting proceeding in which she can admittedly obtain the very relief sought in her separate application for delivery of part of her share of the estate.

Only one important adjudication is cited to me on the question of practice raised by the trustees. In re Ockershausen's Estate, 57 Hun, 590, 10 N. Y. Supp. 928, the contestant in a pending accounting proceeding applied to the surrogate for an order of partial distribution. The surrogate granted the order. Upon appeal to the General Term it was held that sections 2717 and 2718 of the Code, as it existed in 1890 (changed in 1893 to section 2722, which was repealed in 1914), gave power to the surrogate to make the order of partial distribution. It was urged in the Ockershausen Case that the pendency of the accounting proceeding was a bar to the granting of an order for partial distribution under the other sections of the Code above mentioned. The analogy therefore between that case and the situation in the estate before me is very close. In the Ockershausen Case the court said:

"The remedy which a distributee has under these sections is not within the principle that two proceedings are pending for the same thing, and that the first in time is first in right. The partial distribution can be made while the contest over items which affect the general settlements is going on. The surrogate will not order a distribution so as to make the executor liable for the same money upon final accounting. If the facts are stated correctly in the papers, the surrogate left more than enough in the executor's hands to cover all liabilities."

The order of the surrogate was therefore affirmed. This case is therefore an authority for a partial distribution in this matter.

I have examined all the cases cited by the trustees and by the promovant, and besides the Ockershausen Case the only other cases which seem helpful are Matter of Hunt, 110 App. Div. 533, 97 N. Y. Supp. 403, and Matter of McQuade, 157 App. Div. 344, 142 N. Y. Supp. 493. Both of these cases are, however, distinguishable from the case at bar, and in my opinion they are not authoritative on this motion herein. It is urged by the trustees that, if the technical objection to the partial distribution be determined in favor of the promovant, and even if the matter rested in discretion, the order applied for should not be made because of the objections already filed to the account, because further objections may be filed and because of the

difficulties of transferring the securities to the petitioner or paying her in cash.

All legacies have been paid as well as all debts and administration expenses down to the time of filing the account in 1914. If the objections filed or to be filed are sustained the share of the petitioner will be increased. If the objections are overruled her share remains practically the same. If the trustees were permitted to raise the question of further indebtedness to the estate by J. Edgar T. Rutter and John R. Rutter on account of advancements that were not taken into consideration in the account of 1897, and if it were determined that further deductions should be made from the shares of Mrs. Moore and J. Edgar T. Rutter, such deduction from the share of Mrs. Moore would still leave the value of her interest well over $100,000. According to the trustees' figures Mrs. Moore's interest in the estate is worth about $114,000. There is no possible way by which harm could come to the trustees if I were to direct that they pay to Mrs. Moore on account of her interest $25,000.

There is some difficulty, however, in the way of such an order owing to the fact that the trustees have placed their own valuations upon the securities comprising the bulk of the estate. They have set aside and made a division of the several securities that are to be paid to the three children of the testator and to Mrs. Moore. A transfer of securities cannot be directed because no consent to a distribution in kind has been filed and no appraisal has been had pursuant to section 2736, C. C. P. If a partial distribution were to be ordered the decree would necessarily have to direct the trustees to pay in cash. This would necessitate the sale of some of the securities. That this difficulty is not a serious one is evident from the fact that, as the accounting proceeding now stands, the decree therein cannot direct delivery of the securities. Such delivery could only be directed upon filing the consents and upon the appraisal provided for by section 2736, C. C. P. In my opinion the application for a partial delivery should be granted by directing payment to the extent of $25,000 to the petitioner.

I will now go back to motion No. 3 for the usual order of reference of the objections interposed to the final accounts. Some oral testimony will be required, as, for instance, testimony as to the reasonableness of the amount of $2,552.85 paid to the attorney for the trustees according to schedule VIII of the account and objected to in paragraph VIII of the objections filed by Beatrice R. Moore. Further testimony will in all probability be required to substantiate payments amounting to $486 set forth in schedule XXV of the account and objected to in paragraph XII of the objections filed by Beatrice R. Moore. Testimony will also be required on several other minor objections interposed by said Beatrice R. Moore. The several accounts should be consolidated in the usual way. Thereupon I shall direct that an order of reference be made to David B. Ogden, Esq., counselor at law, to hear and determine all questions arising upon the settlement of such accounts. This seems to me to be a just and proper disposition of the motion to refer.

Let the various orders be settled, on the usual notice, in conformity with this opinion.